[Crim. No. 2362.   In Bank.—December 1, 1921.]

In the Matter of LAURA CULVER on Habeas Corpus.

[1] HABEAS CORPUS—CRIMINAL COMPLAINT IN JUSTICE'S COURT—DETERMINATION OF INSUFFICIENCY.—In *habeas corpus* proceedings, a court may determine whether or not a complaint in a justice's court in a criminal proceeding states facts sufficient to constitute a public offense.

[2] ID.—LIBERALITY OF CONSTRUCTION.—In determining the sufficiency of a criminal complaint in a justice's court, the greatest liberality of construction must be indulged, and if the complaint states facts which constitute a crime, it will not be held insufficient because other facts are stated which are irrelevant or immaterial or because the law violated by the alleged acts is inaccurately described therein.

[3] CRIMINAL LAW — STATUTES — PLEADING AND EVIDENCE.—A court takes judicial notice of the statutes of the state, and it is unnecessary that their titles or terms be set forth in a criminal complaint.

[4] ID.—NATURE OF ACTS CHARGED.—If the facts stated in a criminal complaint constitute a crime under a particular law, an allegation that they are a violation of another and different law may be disregarded as immaterial.

[5] PUBLIC HEALTH — QUARANTINE — POWER OF STATE BOARD.—By virtue of the broad power conferred by sections 2979 and 2979a of the Political Code and by the Public Health Act (Stats. 1907, p. 893), the state board of health has power to order the quaran-

tine of persons who have come in contact with cases and carriers of contagious diseases.

[6] Id.—Method of Quarantine.—Under section 13 of the Public Health Act, as amended in 1911 (Stats. 1907, p. 893; Stats. 1911, p. 565), which provides certain rules governing cases of quarantine, the accepted method of quarantining a person is by confining him in the house in which he is living.

[7] Id.—Removal of Quarantine Placard — Misdemeanor Under Health Act.—Under section 13 of the Public Health Act, as amended in 1911 (Stats. 1907, p. 893; Stats. 1911, p. 565), which provides certain rules governing cases of quarantine, the removal of a quarantine placard affixed to a place of residence under an order of the state board of health is a misdemeanor.

[8] Id.—Pleading—Sufficiency of Complaint.—A complaint charging the removal of a quarantine placard affixed to a place of residence under an order of the state board of health states a public offense under the Public Health Act, regardless of whether it sufficiently states such an offense under section 377a of the Penal Code, as alleged in the complaint.

PROCEEDINGS on Habeas Corpus to test the validity of a conviction of a misdemeanor in the Justice's Court of the City of Berkeley. Writ discharged and petitioner remanded.

The facts are stated in the opinion of the court.

Chas. C. Boynton for Petitioner.

Ezra W. Decoto, District Attorney and Frances Wilson Kidd, Deputy District Attorney, for Respondent.

LENNON, J.—In the justice's court of the city of Berkeley, county of Alameda, petitioner, Laura Culver, was convicted on a complaint purporting to charge her with the commission of a misdemeanor. She was fined, with the alternative of imprisonment, and, accordingly, upon refusing to pay the fine, was taken into custody and imprisoned by the sheriff of Alameda County. Petitioner subsequently applied to this court for a writ of *habeas corpus* and was released on bail pending a determination of this proceeding.

In his return to the writ the sheriff of Alameda County, the respondent herein, raised several objections to a con-

sideration by this court of the merits of petitioner's application for the writ. However, inasmuch as respondent apparently abandoned reliance upon these preliminary objections at the oral argument and counsel for petitioner and respondent addressed their discussion solely to the merits of the case both at the oral argument and in the briefs filed subsequent to the oral argument, any opposition to a hearing on the merits must be held to have been withdrawn. The first point before this court is, therefore, the contention that the imprisonment of petitioner is unlawful for the reason that the complaint does not charge the commission of any act constituting a criminal offense.

The complaint herein alleges that: The state board of health issued an order directing the quarantine of petitioner's niece, who was a minor child residing at petitioner's home in Berkeley, for the reason that said child had come in contact with cases and carriers of diphtheria. Upon receiving this order of the state board, a police officer of the city of Berkeley affixed a placard on petitioner's premises reading:

"Diphtheria Contact.

"These premises are declared to be in a state of quarantine. All persons are forbidden to leave or enter these premises or to remove any article therefrom without the permission of the Health Officer. Persons removing this notice will be prosecuted."

Petitioner removed the placard from the premises in the presence of the police officer. Such conduct, the complaint charges, constituted a misdemeanor under section 377a of the Penal Code, which provides: "Every person who after notice shall violate, or who, upon the demand of any public health officer, shall refuse or neglect to conform to any rule, order or regulation prescribed by the state board of health respecting the quarantine, or disinfection of persons, animals, things or places shall be guilty of a misdemeanor."

[1] It is true, as petitioner contends, that it is a settled rule in *habeas corpus* proceedings that a court may determine whether or not a complaint in a justice's court in a criminal proceeding states facts sufficient to constitute a public offense. (*Ex parte Kearny,* 55 Cal. 212; *Ex parte · Greenall,* 153 Cal. 767, 770, [96 Pac. 804]; *Matter of Ah*

*Sing,* 156 Cal. 349, [104 Pac. 448].) **[2]** However, the rule is also well established that in determining the sufficiency of such a complaint the greatest liberality of construction must be indulged; if the complaint states facts which constitute a crime, it will not be held insufficient because other facts are stated which are irrelevant or immaterial or because the law violated by the alleged acts is inaccurately described therein. (*Ex parte Williams,* 121 Cal. 328, 330, [53 Pac. 706].) **[3]** A court takes judicial notice of the statutes of the state, and it is unnecessary that their titles or terms be set forth in the complaint. **[4]** If the facts stated constitute a crime under a particular law, an allegation in a complaint that the acts in question are a violation of another and different law may be disregarded as immaterial, for it does not alter the nature of the acts charged nor prevent them from constituting a crime. Consequently, it is not essential that the acts alleged to have been committed by petitioner shall have been violative of a "rule, order or regulation prescribed by the state board of health," so as to amount to a misdemeanor under section 377a of the Penal Code. If the tearing down of the placard under the circumstances alleged in the complaint constituted a misdemeanor under any statute of the state, the complaint must be held to charge the commission of a public offense.

**[5]** There can be no doubt but that, by virtue of the broad power conferred by sections 2979 and 2979a of the Political Code and by the "Public Health Act," the state board of health has power to order the quarantine of persons who have come in contact with cases and carriers of contagious diseases "whenever in the judgment of the said Board such action shall be deemed necessary to protect and preserve the public health."

Section 13 of the so-called "Public Health Act" (Stats. 1907, p. 893; amended, Stats. 1911, pp. 565, 568), provides certain rules governing cases of quarantine. Rule 1 provides, among other things, that, with respect to quarantine, the local health authorities must follow all general and special rules, regulations and orders of the state board of health. Rule 3 reads as follows: "When any building, house, structure, or part thereof, or tent or other place, is quarantined because of a contagious, infectious or communicable disease, said local health boards or chief execu-

tive health officer shall cause to be firmly fastened, in the most conspicuous place upon such house, building, tent or other place, a placard or flag, upon which is printed the name of the disease, in plain and legible letters of at least two and one-half inches in length. This placard or flag must not be removed by any person except the health officer or his deputy and in no case until the premises have been thoroughly disinfected.'' Section 21 of the said act provides that ''Any person violating any of the provisions of this Act . . . shall be guilty of a misdemeanor . . . ''

In the instant case, upon receiving an order from the state board of health directing that petitioner's niece be quarantined, the local authorities affixed to the place of residence of petitioner's niece a placard conforming to the provisions of rule 3, above quoted. If the quarantining of these premises was a proper act in pursuance of the order received from the state board of health, then petitioner's act in tearing down the placard was punishable as a misdemeanor under the ''Public Health Act.''

[6] In this connection petitioner points out the distinction between the quarantine of a *place* and quarantining a *person*. There may be cases in which buildings are quarantined, as distinguished from persons. For instance, where smallpox patients have been removed from a building to a pesthouse the building itself should be quarantined until disinfected, but this does not alter the fact that the ordinary method of quarantining persons is by confining them to their residences and by giving notice to the people outside and inside that there is to be no going out and coming in. It is perfectly apparent from a consideration of the quarantine rules incorporated in the ''Public Health Act,'' section 13 (Stats. 1911, pp. 565, 568), that this statute recognizes that the method of quarantining a person is to quarantine the place in which he lives. Otherwise the quarantine is spoken of as an arrest of the person. Thus, rule 1, requiring quarantining in case of certain contagious diseases and a report thereof to be sent to the secretary of the state board of health, mentions only ''cases'' of quarantine. Rule 2, likewise, provides that *diseases* ''shall be isolated whenever in the opinion of the state board of health, its secretary, or the local board of health or health officer, isolation is necessary to protect the public health.'' In other words, both

sections provide for the isolation of the *disease*, without distinguishing between the quarantining of place or person. Rule 4 provides for the disinfection of certain parts of the house when persons have been quarantined therein. Rule 8 provides: "Every person subject to quarantine, residing, or being, in a quarantined building, house, structure or tent, shall not go beyond the lot upon which such building, house, structure or tent is situated . . . " In fact, all the rules, from 1 to 8, inclusive, clearly disclose that the accepted method of quarantining a person is by confining him to the house in which he is living.

Section 2979 of the Political Code provides that the state board may establish and maintain places of quarantine or isolation, but how can it be seriously contended that a mere order directing that a person be quarantined is intended to mean that that person shall be arrested and placed in such an isolation hospital rather than be quarantined by being confined to his residence. Of course, taking possession of the person in the exercise of the powers of the state over health matters would be a method of quarantine, but obviously that cannot be said to be the only method of quarantining a person when the statute clearly indicates that when a place is quarantined the people therein are confined thereto and cannot leave. For instance, in the case at bar, if the state board of health had ordered the quarantining of the place of residence of the petitioner, it would thereby have subjected the proceedings to the very absurdity which petitioner contends for, namely, that the place was quarantined and the person was not. The word "quarantine" is defined in 32 Cyc. 1286 as follows: "Quarantine as a verb" means "to keep persons, when suspected of having contracted or been exposed to an infectious disease, out of a community, or to confine them to a given place therein, and to prevent intercourse between them and the people generally of such community." Now, the order of the state board of health was to quarantine the person of the petitioner's niece. This meant that she must be confined to a given place and kept out of the community. This was obviously accomplished by putting the appropriate notice upon the house which she occupied as required by statute. The allegation that the niece "resided" at the place mentioned may, under the liberal rules of construction above referred

to, be interpreted in connection with the whole complaint as meaning that she was an "occupant" thereof.

[7] It follows that the placard quarantining the premises was affixed in pursuance of the order of the state board of health and that petitioner's act in tearing it down was a misdemeanor under the "Public Health Act."

[8] In view of the fact that the act was a violation of section 13 of the "Public Health Act," it is unnecessary to pass upon the question raised by petitioner concerning the constitutionality of section 377a of the Penal Code.

The writ is discharged and petitioner remanded.

Wilbur, J., Shaw, C. J., and Sloane, J., concurred.