### DANIEL *v.* PUTNAM COUNTY.

There is no authority of law for officials in charge of the financial affairs of a county to purchase vaccine matter and make the cost of the same a charge against the county.

Argued May 3, — Decided May 23, 1901.

Complaint.    Before Judge Hart.    Putnam superior court.    Sep-tember 18, 1900.

*Turner & Preston*, for plaintiff.
*S. T. Wingfield*, for defendant.

FISH, J.    The plaintiff brought an action, in the statutory form, against Putnam County, upon an open account for " vaccine points " furnished the defendant.    At the trial he offered an amendment to his petition, in which he alleged : " The goods, the value of which. is sued for, were certain vaccine points furnished to and for the use of the County of Putnam, through and by the orders of the com-

missioners of roads and revenues of said county, and which were actually received and used by and for the benefit of the county; and the contract which said county authorities made to pay for said goods so purchased was one authorized to be made by the constitution of the State and the laws passed in conformity therewith, and was within the legal competency of the county; and said debt so created is one for which the county may levy and collect taxes to pay; and therefore the county is liable to suit therefor." The court refused to allow the amendment, and sustained a motion to dismiss the petition on the ground that it did not set forth a cause of action. Without stopping to inquire whether the amendment should have been allowed, and granting, for the sake of the argument, that it should have been, the case really turns upon whether, taking the petition and the amendment together, a cause of action was stated. The counties of this State can only raise revenue by taxation for certain specified purposes. They can only levy taxes within the limitations of and for the purposes specified in the constitution. Art. 7, sec. 6, par. 2, of the constitution (Civil Code, § 5892), provides: "The General Assembly shall not have power to delegate to any county the right to levy a tax for any purpose, except for educational purposes in instructing children in the elementary branches of an English education only; to build and repair the public buildings and bridges; to maintain and support prisoners; to pay jurors and coroners, and for litigation, quarantine, roads, and expenses of courts; to support paupers, and pay debts heretofore existing." Under this paragraph of the constitution did the commissioners of roads and revenues of Putnam County have authority to bind the county by a contract with the plaintiff for the purchase of "vaccine points," to be furnished by him "for the use of the county," in preventing the spread of the smallpox within its borders? Clearly they could not bind the county by the creation of a debt for the payment of which it had no power to levy a tax. It is perfectly plain that they had no power to bind the county in this matter, unless the word "quarantine," as used in the above-quoted paragraph of the constitution, is broad enough in its meaning to include the purchase of vaccine matter to be used in preventing the spread of the smallpox. The plaintiff recognizes this, and contends that the vaccine matter which he furnished to the county authorities was purchased and used by them for "quar-

antine" purposes. · We do not think that this is a sound contention. To quarantine persons infected with, or who have been exposed to, the smallpox is one way of preventing the spread of the disease in a community; to vaccinate people who are not infected with the disease, in order that they may become immune therefrom, is another way of accomplishing the same purpose. But vaccination is one thing and quarantine is another. To quarantine persons means to keep them, when suspected of having contracted or been exposed to an infectious disease, out of a community, or to confine them to a given place therein, and to prevent intercourse between them and the people generally of such community. Persons who are merely vaccinated, and then allowed to go when and where they please and to mingle freely with the other members of the community, are in no sense of the word "quarantined." The preventive measure adopted in their case tends to protect them both from contracting the disease and from being quarantined. It is true that the object sought to be accomplished in each instance is the same, the prevention of the dissemination of the disease in the community; but the means resorted to for this purpose in the one instance is different from the means resorted to in the other.

The constitution gives to the authorities of a county the power to raise money by taxation for defraying expenses incurred in using one of the methods of prevention, but gives them no power to thus raise money to pay expenses incurred in resorting to the other method. Neither does the statutory law undertake to authorize county authorities to purchase vaccine matter for the purpose of vaccinating people residing in such county, and thus checking or preventing an epidemic of smallpox. "The ordinary of each county, or the corporate authorities of any town or city in this State, within the limits of which the smallpox has appeared, or may appear, are authorized and empowered to provide a suitable hospital for those afflicted, and to furnish them with medical or other attention that in their judgment those so afflicted may require." Political Code, § 1472. "Such ordinary or corporate authorities may also provide proper quarantine regulations to prevent the spread of said disease; *provided*, that no person shall be forced to leave his or her home to go to the hospital aforesaid, when they are properly provided for and guarded at their own expense; said court shall not pay any expense of any case so situated." Ib. § 1473. "Said ordinary or

corporate authorities shall make, or cause to be made, a proper and just account of all expenses accruing from such quarantine and other attention, either medical or nursing, of all they may have under control, and who submit to the regulations of said court or corporate authorities." Ib. § 1474. These sections contain all the power conferred upon county authorities in reference to pro-viding and enforcing measures to prevent, or check, an epidemic of smallpox. It will be seen that they deal only with the subject of quarantine. The ordinary is empowered to provide a hospital for those afflicted with the smallpox, and to furnish them, not the members of the community at large, with medical or other attention that, in his judgment, *those so afflicted may require*. He is not authorized to furnish people outside of the hospital and not afflicted with the disease with medical or other attention. He can not furnish vaccine matter and employ physicians to vaccinate the outsiders. He can provide regulations to prevent the spread of the smallpox, but the regulations must be quarantine regulations. He is required to make, or cause to be made, a proper and just account of all expenses accruing from such quarantine and other attention, either medical or nursing, of all that he may have under control, and who submit to the regulations which he has provided. While he has power, by the enforcement of regulations prescribed for the purpose, to keep the people at large away from the smallpox hospital and from other places where persons afflicted with the disease may be confined under guard, it can not be said that he has the people of the county generally under control; and the expenses of quarantine and other attention, either medical or nursing, which he is authorized to incur and of which he must render a proper and just account, are limited to the cases of those whom he may have under control and who submit to the quarantine regulations. The law has not, however, left the counties of this State powerless to procure vaccine matter, to be used in preventing or checking the spread of the smallpox. Section 1475 of the Political Code provides: "The Governor is authorized and required to procure the necessary quantity of genuine vaccine matter, either by purchase or manufacture, at such reasonable compensation as he may contract for, and have the same transmitted to the ordinaries of each county in this State for immediate use." So far as we have been able to ascertain, the scheme of the law in this State has never been

for each separate county to bear the expense of furnishing vaccine matter for the purpose of preventing the spread of smallpox within its limits, but it has been for the necessary vaccine matter to be paid for by the State. Originally the State also undertook to pay all reasonable and necessary expenses incurred in preventing the spread of smallpox within its borders, by reimbursing local communities which had incurred expenses for this purpose. See act of Dec. 14, 1793 (Acts 1793, vol. 1, p. 392, Prince's Dig. 270); Preamble to act of Dec. 26, 1831 (Acts 1831, p. 245, Prince's Dig. 276); Report of legislative committee and resolutions adopted Dec. 4, and approved Dec. 6, 1834 (Acts 1834, pp. 308–311); Act of Dec. 26, 1836 (Acts 1836, pp. 29, 30); Act of Dec. 29, 1836 (Acts 1836, p. 181).

This policy was changed by the act of Dec. 9, 1843, which repealed "all laws and parts of laws requiring the expenses incurred on account of smallpox and other pestilential diseases to be paid from the State treasury," and required the Governor to "cause a supply of vaccine matter to be purchased and kept on hand at different and convenient places throughout the State, to be furnished to the people gratis, for inoculation," the same to be paid for "out of the contingent fund." Acts 1843, p. 168. By the act of Dec. 13, 1862, the State returned to its old policy of paying the reasonable and necessary quarantine expenses incurred by county and corporate authorities. That act also contained substantially the same provisions as those which we have quoted from our present Political Code, including the section requiring the Governor to procure the necessary quantity of genuine vaccine matter, and have the same transmitted to the proper county authorities for immediate use. Acts of 1862, pp. 33, 34. The act of April 17, 1863, after providing how claims arising under the act of 1862 should be established and settled, declared that that act should no longer be of force, except for the purpose of settling claims that might have arisen under it. Acts 1862–1863, p. 162. The act of Feb. 5, 1866, substantially re-enacted the provisions of the act of 1862, except the section of the latter act requiring the State to pay the necessary quarantine expenses incurred by county and municipal authorities, and empowered the inferior courts or municipal authorities to levy an extra tax sufficient to defray all just and equitable debts contracted under its provisions. Acts 1865–1866, p. 88. The same provi-

sions that are contained in the Political Code are found in the Codes of 1868 and 1873, and the Code of 1868 also contained a section requiring the quarantine expenses incurred by the counties and municipal corporations to be paid from the State treasury, the codifiers having apparently overlooked the fact that these provisions of the act of 1862 were repealed by the act of 1863. This mistake was corrected in the Code of 1873. When the constitution of 1877 was framed, the law still required the Governor to procure a sufficient quantity of genuine vaccine matter and furnish the same to the ordinary of each county in the State as necessity might demand. In view of this fact and the history of our legislation in reference to the prevention of smallpox, it seems very evident that the word "quarantine," as used in the paragraph of the constitution which provides for what purposes counties may levy taxes, was not intended to have any more than its usual and legitimate meaning, and that it can not be held that a purchase of vaccine matter to be used to prevent the spread of smallpox in a county was made for "quarantine" purposes, within the meaning of the word "quarantine" as used in the constitution. The County of Putnam had no power to incur a debt for the "vaccine points" which the plaintiff claims to have furnished it; consequently, if its commissioners of roads and revenues made such a purchase from the plaintiff, the county is not bound by their act. It follows that the court below committed no error in sustaining the motion of the defendant to dismiss the plaintiff's action.

*Judgment affirmed. All the Justices concurring.*