2. The admission of irrelevant testimony will not generally warrant the granting of a new trial, unless it appears that the evidence was calculated to injuriously affect the complaining party; especially is this true when the evidence is not material and not calculated to mislead the jury. *Elliott* v. *State*, 132 *Ga*, 758 (64 S. E. 1090).

3. Where evidence shows prima facie that declarations made by a person who had been shot and soon thereafter died were dying declarations within the meaning of the law, they are admissible in evidence. *Lowe* v. *State*, 132 *Ga*. 341 (63 S. E. 1114). See also *Jones* v. *State*, 130 *Ga*. 274 (60 S. E. 840); *Bird* v. *State*, 128 *Ga*. 253 (57 S. E. 320).

4. If the law of voluntary manslaughter was involved, it was founded solely upon the statement of the accused; and there being no timely written request to charge upon the subject of manslaughter, there was no error in refusing to do so. *Robinson* v. *State*, 114 *Ga*. 56 (39 S. E. 862).

5. Where upon the trial of one charged with murder it was the theory of the State that the defendant killed the deceased for the purpose of robbery, and there was evidence to support such theory, it was not erroneous to permit a witness to testify that the deceased "had some money on the Saturday previous to the killing on Monday. . . I think I paid him between ten and fifteen dollars. . . I suppose Jesse Cook saw me pay him, he was standing right there by him," over the objection of defendant that such testimony was irrelevant.

6. The evidence was sufficient to support the verdict, and there was no abuse of discretion in refusing to grant a new trial.

*Judgment affirmed. All the Justices concur.*

APRIL 15, 1910.

Indictment for murder. Before Judge Fite. Bartow superior court. January 11, 1910.

*G. H. Aubrey* and *W. C. Henson*, for plaintiff in error.

*John C. Hart, attorney-general,* and *Thomas W. Milner, solicitor-general,* by *George W. Stevens,* contra.

---

## BARKSDALE *v.* HAYES *et al.,* commissioners.

Assuming a judgment against a county to be valid and not open to attack as such, yet, where the record of the suit does not show upon its face that the judgment rests upon a claim referable to any one of the purposes enumerated in the constitutional provision for which taxes may be levied by the county, and this does not otherwise appear, the writ of mandamus should not issue to compel the county commissioners to issue a warrant upon the county treasurer for its payment from funds arising from taxation, or to levy a tax in order to provide for such payment.

APRIL 16, 1910.

Petition for mandamus. Before Judge Worrill. Early superior court. October 9, 1909.

*B. R. Collins,* for plaintiff.    *R. H. Sheffield,* for defendants.

LUMPKIN, J.   Barksdale filed his petition for a writ of mandamus against the county commissioners of Early county, alleging as follows: The board of commissioners have charge and control of the fiscal affairs of the county, including the allowance and settlement of claims against it, accruing from the establishment of quarantine regulations in the prevention of the spreading of smallpox and medical services rendered in connection therewith.   Petitioner brought suit against the county in a justice's court, and recovered judgment thereon.   The suit was based on an account containing the following item: "Early County, Georgia, Dr. to C. R. Barksdale.   Dec., 1905.   To treatment of case of smallpox and vaccinating six people in Jim Royal's (col.) family, seven miles southwest of Blakely on Charlie Deal's place, $25.00." Execution issued on the judgment, and was presented to the board of commissioners for payment, which was refused by them.   The prayer was for the writ of mandamus requiring the commissioners to issue a warrant in favor of the petitioner on the county treasurer for the amount of the judgment, and to levy a tax to pay such warrant, should there not be funds in the treasury sufficient for that purpose.   The defendants demurred to the petition, and also answered it, admitting its allegations.   The case was submitted to the presiding judge on the pleadings.   He refused to grant the writ of mandamus.   The petitioner excepted.

In *Brunson* v. *Caskie,* 127 *Ga.* 501 (56 S. E. 621, 9 L. R. A. (N. S.) 1002, note), it was held that before the writ of mandamus will issue to compel county commissioners to issue their warrant upon the treasury to pay a debt, it must appear that the debt comes within one of the classes provided in the constitution for which a tax may be levied.   This is equally true as to the issuing of the writ to compel the levy of a tax in order to provide funds to discharge the debt.   See also United States v. County of Macon, 99 U. S. 582 (25 L. ed. 331) ; Board of County Commissioners v. Burpee, 24 Colo. 57 (48 Pac. 539).   The constitution declares that "The General Assembly shall not have power to delegate to any county the right to levy a tax for any purpose, except for educational purposes in instructing children in the elementary branches

of an English education only; to build and repair the public buildings and bridges; to maintain and support prisoners; and to pay jurors and coroners, and for litigation, quarantine, roads, and expenses of courts, to support paupers and pay debts heretofore existing." Civil Code, § 5892. It is sought to bring the present case within the power to levy a tax for quarantine purposes. The suit did not on its face show that there was any quarantine in existence, or that the services of the plaintiff were rendered in connection therewith. The mere fact that he treated a case of smallpox and vaccinated six persons in Early county did not show that the county was liable to him on account of expenses of a quarantine. A judgment against a county may be conclusive for some purposes. But that here involved does not adjudicate that the indebtedness was one to pay which the county could levy a tax or the commissioners were required to draw a warrant. The Civil Code, § 1472, provides for the establishment by county or municipal authorities of a suitable hospital for those afflicted with smallpox, and for furnishing them with medical or other attention necessary. Section 1473 declares that the ordinary or municipal authorities may provide proper quarantine regulations to prevent the spread of smallpox. It states that no person shall be forced to leave his or her home to go to the hospital, when they are properly provided for and guarded at their own expense, but that "said court [here the county authorities] shall not pay any expense of any case so situated." Section 1475 authorizes the Governor to procure vaccine matter and have it transmitted to the ordinaries of each county in the State. In *Daniel* v. *Putnam County,* 113 *Ga.* 570, 572 (38 S. E. 980, 54 L. R. A. 292), it was said that "To quarantine persons means to keep them, when suspected of having contracted or been exposed to an infectious disease, out of a community, or to confine them to a given place therein, and to prevent intercourse between them and the people generally of such community.". It was accordingly held that there was no authority of law for officials in charge of the financial affairs of a county to purchase vaccine matter and make the cost thereof a charge against the county, such expense not falling legitimately within the constitutional authority to levy a tax for the purpose of quarantine.

In the present case there was nothing sufficient to show that the judgment was based on a liability to pay which the county au-

thorities were authorized to levy a tax and use the fund arising therefrom. The presiding judge therefore did not err in refusing to grant the writ of mandamus.

*Judgment affirmed. All the Justices concur.*

---

## JORDAN v. STRANGE.

LUMPKIN, J. The verdict in this case was authorized by the evidence. No error was assigned except the overruling of the motion for a new trial, based on the general grounds that the verdict was contrary to law and evidence, and to the weight of the evidence, and was without evidence to support it. There was no error in overruling the motion.

*Judgment affirmed. All the Justices concur.*

APRIL 16, 1910.

Action for breach of warranty. Before Judge Littlejohn. Schley superior court. May 22, 1909.

*Hart & Taylor* and *Shipp & Sheppard,* for plaintiff in error. *Charles R. McCrory,* contra.

---

## CITY OF CAMILLA v. NORRIS.

ATKINSON, J. 1. The charter of a municipality conferred upon it the power "to own, use, and operate for municipal purposes and for profit, a system of waterworks and electric lights, to make rules and regulations regarding the use of the same by the public, and to provide by ordinance for the punishment of those who illegally use said water or light." (Acts 1907, p. 505, sec. 24.) A resident filed a petition for mandamus to compel the municipal authorities to supply water at her residence. It was alleged that the municipality had established a water system with which the applicant's residence was connected, and was serving the public generally, but without cause had stopped applicant's supply of water and refused to serve her, although she was due nothing for water rent, and tender of payment in advance was made for the service desired. *Held,* that the petition was not subject to dismissal on the ground that the plaintiff had a specific legal remedy. See Civil Code, § 4867; 1 Farnham on Water and Water Rights, § 159 (d); McCrary v. Beaudry, 67 Cal. 120 (7 Pac. 764); State v. Joplin Waterworks, 52 Mo. App., 312; Haugen v. Albina Light & Water Co., 21 Oregon, 411 (28 Pac. 244, 14 L. R. A. 424).

2. On the trial of an application for mandamus, if an issue of fact is involved, it may be heard by the judge in vacation upon the consent of all parties. Civil Code, § 4873.