[Crim. No. 12263. Second Dist., Div. Four. Nov. 18, 1966.]

In re ERIC HALKO on Habeas Corpus.

Bertram H. Ross, under appointment by the Court of Appeal, for Petitioner.

554

Harold W. Kennedy, County Counsel, and Gordon W. Treharne, Deputy County Counsel, for Respondent.

CHANTRY, J. pro tem.* — This is an application for a writ of habeas corpus by which petitioner, Eric Halko, seeks release from the Mira Loma Hospital, security side.

Petitioner has a diagnosis of pulmonary tuberculosis, minimal active. On July 1, 1964, he was served with a quarantine order of isolation confining him to Mira Loma Hospital. He deserted that institution on August 1, 1964, and was subsequently arrested, tried, and convicted of violating section 3351[1] of the Health and Safety Code of California.[2] On August 20, 1964, he was sentenced to 180 days in jail by the judge of the municipal court, Antelope Judicial District. The sentence was suspended, and the petitioner was placed on probation for three years on condition he serve the first 179 days in jail. Prior to serving the jail sentence the petitioner was served with an order of isolation because of his tubercular condition and returned to the Mira Loma Hospital, security side. Thereafter, except for one interlude not pertinent to a determination of this case, a public health officer of this county served Halko with successive orders of isolation at Mira Loma Hospital for periods of approximately six months each. These orders are dated January, June, and December of 1965 and March 1966. The petitioner on May 5, 1966, sought a writ of habeas corpus from department 70 of the Superior Court of Los Angeles County. At the conclusion of the hearing in that court the application for writ of habeas corpus was denied.

Petitioner contends the right of the health officer to issue consecutive certificates of quarantine and isolation for periods of six months each, "without means of questioning and judicially determining" the conclusion of the health officer, results in "continually depriving one of his liberty." Therefore, section 3285 "is unconstitutional in that it deprives this petitioner of his liberty without due process of law."

---

*Assigned by the Chairman of the Judicial Council.

[1]"Inasmuch as the order provided for by Section 3285 is for the protection of the public health, any person who, after service upon him of an order of a health officer directing his isolation or examination as provided in Section 3285, violates or fails to comply with the same or any provision thereof, is guilty of a misdemeanor. . . ."

[2]All references are to the Health and Safety Code unless otherwise indicated.

We disagree with the petitioner's interpretation of the law and his assertion that section 3285 is unconstitutional.

Chapter 5 of the Health and Safety Code (sections 3279-3310) deals extensively with tuberculosis. Pulmonary tuberculosis is declared to be an infectious and communicable disease, dangerous to public health. Each city, county, or group of counties may establish and maintain tuberculosis wards, hospitals and sanitariums for the treatment of persons suffering from tuberculosis. Each person being cared for at public expense in a public or private hospital or sanitarium is subsidized by an allocation from state funds to the city, county or group of counties affected.

Section 3285 of the Health and Safety Code sets forth with some particularity the duties and powers of the public health officer in treating with the control of tuberculosis by inspection, examination, quarantine, or isolation. Each health officer is directed to use every available means to ascertain the existence of, and immediately to investigate, all reported or suspected cases of tuberculosis in the infectious stage within his jurisdiction and to ascertain the sources of such infection. In carrying out such investigations each health officer is invested with full powers of inspection, examination, and quarantine or isolation of all persons known to be infected with tuberculosis in an infectious stage.

The section also contains the following provisions:

(1) Whenever the health officer shall determine on reasonable grounds that an examination of any person is necessary for the preservation and protection of the public health, he shall make an examination order in writing, setting forth the name of the person to be examined, the time and place of the examination, and such other terms and conditions as may be necessary to protect the public health. Any person served with an examination order may have such examination made by a physician of his own choice under such terms and conditions as the health officer shall determine on reasonable grounds to be necessary to protect the public health. (3285, subd. (c).)

(2) The health officer may make an isolation or quarantine order whenever he shall determine in a particular case that quarantine or isolation is necessary for the protection of the public health. The isolation or quarantine order shall be in writing, setting forth the name of the person to be isolated, *the period of time during which the order shall remain effective,* the place of isolation or quarantine, and such other terms and

conditions as may be necessary to protect the public health. (3285, subd. (d).)

Any person who, after service upon him of an order of a health officer directing his isolation or examination as provided in 3285, violates or fails to comply with said order is guilty of a misdemeanor. (3351.) The violator shall be prosecuted by the district attorney of the county in which the violation was committed upon the request of a health officer as provided in section 3355.

The duty of the state to protect the public from the danger of tuberculosis is prescribed by the Supreme Court of this state in the following statement: ''It is a well-recognized principle that it is one of the first duties of a state to take all necessary steps for the promotion and protection of the health and comfort of its inhabitants. The preservation of the public health is universally conceded to be one of the duties devolving upon the state as a sovereignty, and whatever reasonably tends to preserve the public health is a subject upon which the legislature, within its police power, may take action. That tuberculosis is a dangerous and infectious disease which attacks both human beings and domestic animals; that it is prevalent throughout the state among both human beings and domestic animals; and that it is communicated to human beings, especially to children, by milk and other food products from infected animals, stand undisputed. . . . In other words, health regulations enacted by the state under its police power and providing even drastic measures for the elimination of disease, whether in human beings, crops or cattle, in a general way are not affected by constitutional provisions, either of the state or national government. (*Lausen* v. *Board of Supervisors*, 204 Iowa 30, 33 [214 N.W. 682, 684].)

''. . . . In construing such an act, the courts must presume that the legislature has carefully investigated and has properly determined that the interests of the public require legislation that will insure the public safety and the public health against threatened danger from diseased animals . . .'' and human beings. ''The determination of that fact is the province of the legislature, and not of the courts. It is also the province of the legislature, in the exercise of a sound discretion, to determine what measures are necessary for the protection of such interests. [Citations.]'' (*Patrick* v. *Riley*, 209 Cal. 350, 354, 356 [287 P. 455].)

''The determination by the legislative body that a particular regulation is necessary for the protection or preservation of

health is conclusive on the courts except only to the limitation that it must be a reasonable determination, not an abuse of discretion, and must not infringe rights secured by the Constitution. [Citations.]'' (*DeAryan* v. *Butler,* 119 Cal.App.2d 674, 682 [260 P.2d 98].)

The Legislature is vested with broad discretion in determining what are contagious and infectious diseases and in adopting means for preventing the spread thereof. (*In re Johnson,* 40 Cal.App. 242 [180 P. 644] ; *Abeel* v. *Clark,* 84 Cal. 226 [24 P. 383].) In order to accomplish the purpose for which this law was enacted, the court should give it a broad and liberal construction. (39 C.J.S., p. 811, § 2.)

The act here in question was obviously passed by the Legislature for a public purpose. It is a law for the suppression of a contagious disease and the promotion of the public health. The provisions of section 3285 of the Health and Safety Code seem reasonable and necessary for the protection and preservation of the public health. It does not appear to us that the Legislature has abused its discretion or violated the terms of the federal or state Constitution by enactment of section 3285.

We now turn to the question of the public health officer's right to restrict the liberty of petitioner to the Mira Loma Hospital by successive isolation or quarantine orders. Petitioner does not dispute the finding of the health officer that he was, when subjected to quarantine regulations, and is now afflicted and suffering from pulmonary tuberculosis which is declared by section 3285 to be an infectious and communicable disease and dangerous to the public health. The petition filed here does not allege that he is free of the disease.

Subdivision (d) of section 3285 directs the health officer to make an isolation or quarantine order in writing, specifying the place of quarantine and other appropriate terms. *In re Culver,* 187 Cal. 437, 442 [202 P. 661], states that the verb ''quarantine'' means ' ''to keep persons, when suspected of having contracted or been exposed to an infectious disease, out of a community, or to confine them to a given place therein, and to prevent intercourse between them and the people generally of such community.'' '

Under former Political Code section 2979a and former Health and Safety Code section 2554[3] health officers were given the power to quarantine persons found to have a venereal disease.

---

[3]See present sections 3053, 3194, 3195.

Persons who were confined in county hospitals or jails pursuant to quarantine orders issued by health officers under those statutes have been denied release on habeas corpus, where the evidence showed reasonable cause to believe that the person was infected. (*In re Martin,* 83 Cal.App.2d 164 [188 P.2d 287]; *In re King,* 128 Cal.App. 27 [16 P.2d 694]; *In re Fisher,* 74 Cal.App. 225 [239 P. 1100]; *In re Travers,* 48 Cal.App. 764 [192 P. 454].)

On the other hand, a person quarantined without reasonable grounds is entitled to relief by habeas corpus. (*In re Arata,* 52 Cal.App. 380 [198 P. 814].) But in that case the court was careful to point out that the issue is a factual one. The opinion states at page 383: "That the health authorities possess the power to place under quarantine restrictions persons whom they have reasonable cause to believe are afflicted with infectious or contagious diseases coming within the definition set forth in Political Code, section 2979a, as a general right, may not be questioned. It is equally true that in the exercise of this unusual power, which infringes upon the right of liberty of the individual, personal restraint can only be imposed where, under the facts as brought within the knowledge of the health authorities, *reasonable ground exists to support the belief* that the person is afflicted as claimed; and as to whether such order is justified will depend upon the facts of each individual case."

Section 3285 does not contain any limitation or prohibition respecting the period of quarantine or the power of the health officer to issue consecutive certificates of isolation. ██ The law reasonably assumes that consecutive orders for quarantine may issue so long as any person continues to be infected with tuberculosis and on reasonable grounds is believed by the health officer to be dangerous to the public health. (*In re King,* 128 Cal.App. 27 [16 P.2d 694].)

There is nothing in this record to indicate the health officer issued any of the respective quarantine orders without probable cause or that petitioner does not at this time have an infectious and communicable disease which is dangerous to the public health.

The writ is denied.

Files, P. J., and Jefferson, J., concurred.