MARY F. WRIGHT *v.* WILLIAM BROWN ET AL.

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued November 6, 1974—decision released January 14, 1975

*Maxwell Heiman,* with whom, on the brief, was *Louis P. Kocsis,* for the appellant (plaintiff).

*John W. Lemega,* with whom, on the brief, were *Thomas J. Hagarty* and *Richard C. Tynan,* for the appellees (defendants Gail Litke and the town of Plainville).

BOGDANSKI, J. This action seeking damages for injuries caused by a dog bite was brought by the plaintiff, Mary F. Wright, against the defendants, William Brown, the town of Plainville and Gail Litke, its dog warden. The dog warden and the town of Plainville demurred to the last four counts

of the five-count complaint. The trial court sustained the demurrer to all four counts and rendered judgment on the demurrer when the plaintiff failed to plead over. From that judgment the plaintiff appealed to this court, assigning error in the sustaining of the demurrer.

The complaint alleged that a dog owned by the defendant Brown attacked and injured the plaintiff; that less than fourteen days prior to this incident, the same dog had attacked another person resulting in the quarantine of the dog by the defendant dog warden; that the dog warden released the dog prior to the expiration of the fourteen-day quarantine period required by § 22-358[1] of the General Statutes; that as a result of that premature release, the dog was placed in a situation where it attacked the plaintiff. The

---

[1] "[General Statutes] Sec. 22-358. . . . QUARANTINE OF BITING DOG. . . . (b) Any person who is bitten, or shows visible evidence of attack by any dog, when such person is not upon the premises of the owner or keeper of such dog, may kill such dog during such attack or make complaint to the chief canine control officer, any canine control officer or the warden or regional canine control officer of the town wherein such dog is owned or kept; and such chief canine control officer, canine control officer, warden or regional canine control officer shall immediately make an investigation of such complaint. If such warden, chief canine control officer, canine control officer, or regional canine control officer finds that such person has been bitten or so attacked by such dog when such person was not upon the premises of the owner or keeper of such dog, such warden, chief canine control officer, canine control officer, or regional canine control officer shall quarantine such dog in a public pound or order the owner to quarantine it in a veterinary hospital or a kennel approved by the commissioner for such purpose; . . . and the commissioner, the chief canine control officer, any canine control officer, any warden or any regional canine control officer may make any order concerning the restraint or disposal of any biting dog as he deems necessary. . . . On the fourteenth day of such quarantine said dog shall be examined by the commissioner or someone designated by him to determine whether such quarantine shall be continued or removed. . . ."

second and fifth counts of the complaint were based on negligence, alleging that the dog warden and the town failed to comply with the standard of conduct required by § 22-358. The third and fourth counts were based on a theory of nuisance.

The dog warden and the town demurred to the complaint as follows: (a) to the second count "on the grounds that any purported violation of . . . [§ 22-358] would not constitute negligence since the plaintiff was not within the class of persons which that statute was designed to protect"; (b) to the third and fourth counts on the ground that no positive act of the town or of its employee was alleged; and (c) to the fifth count on the grounds that (1) the plaintiff was not within the class of persons protected by § 22-358, and (2) since any act of the dog warden was governmental, the town was immune from liability.

The trial court concluded that § 22-358 was enacted to provide a period of quarantine to determine whether a person bitten by a dog required the administration of a rabies vaccine and "to protect members of the community from being bitten by diseased dogs." The court then concluded that the plaintiff was not within the class of persons protected by § 22-358 since she had not alleged that she was bitten by a diseased dog.

The purpose of the quarantine requirement in § 22-358 is readily ascertainable from the meaning of that word. "Quarantine" means to isolate as a precaution against contagious disease or a detainment to prevent exposure of others to disease. Webster's Third New International Dictionary 1859; 39 C.J.S., Health, § 15 (a). See *In re Halco,* 246 Cal. App. 2d 553, 557, 54 Cal. Rptr. 661; *Daniel*

v. *Putnam County,* 113 Ga. 570, 572, 38 S.E. 980; 3A C.J.S., Animals, § 73. While the specific concern of the legislature may have been to protect the victim of a dog bite from the threat of rabies,[2] that restricted purpose is not expressed in the language of § 22-358. Nowhere is the control of rabies mentioned. The intent expressed in the language of the statute is the controlling factor. *Kellems* v. *Brown,* 163 Conn. 478, 515, 313 A.2d 53; *United Aircraft Corporation* v. *Fusari,* 163 Conn. 401, 410, 311 A.2d 65. The trial court correctly concluded that § 22-358 was intended not only to protect persons bitten by a dog from the threat of rabies, but also to protect the general public from contact with diseased dogs.

"Where a statute is designed to protect persons against injury, one who has, as a result of its violation, suffered such an injury as the statute was intended to guard against has a good ground of recovery." *Knybel* v. *Cramer,* 129 Conn. 439, 443, 29 A.2d 576; *Coughlin* v. *Peters,* 153 Conn. 99, 102, 214 A.2d 127. That principle of the law sets forth two conditions which must coexist before statutory negligence can be actionable. First, the plaintiff must be within the class of persons protected by the statute. Id., 101; *Hassett* v. *Palmer,* 126 Conn. 468, 473, 12 A.2d 646; *Monroe* v. *Hartford Street Ry. Co.,* 76 Conn. 201, 207, 56 A. 498. Second, the

---

[2] See 13 H. R. Proc., Pt. 2, 1969 Sess., p. 928, wherein Representative Stewart B. McKinney commented during debate of an amendment (H.B. 5522, Public Acts 1969, No. 35) to § 22-358 on the need to quarantine a biting dog in order to detect the presence of rabies. See also 2 Gray, Attorneys' Textbook of Medicine (3d Ed.) ¶ 40.27 (3) wherein it is noted that if a dog lives and is well at the end of ten quarantine days, a rabies vaccine need not be given to the bitten victim.

injury must be of the type which the statute was intended to prevent. *Toomey* v. *Danaher,* 161 Conn. 204, 212, 286 A.2d 293; *Longstean* v. *McCaffrey's Sons,* 95 Conn. 486, 493, 111 A. 788. See Prosser, Torts (4th Ed.) § 36; Restatement (Second), 2 Torts §§ 286, 288.

If we apply those principles to the purpose of § 22-358, it becomes clear that the class of persons protected is not limited; rather, the statute was intended to protect the general public or, as stated by the trial court, "members of the community."

Since the demurrer to the second and fifth counts was addressed only to the class of persons protected by § 22-358, and since the plaintiff, as a member of the general public, is within that class, the demurrer should not have been sustained on that ground. See *Stradmore Development Corporation* v. *Commissioners,* 164 Conn. 548, 551, 324 A.2d 919; *Ross Realty Corporation* v. *Surkis,* 163 Conn. 388, 391, 311 A.2d 74; *Covino* v. *Pfeffer,* 160 Conn. 212, 213, 276 A.2d 895.

Although we have concluded that the second and fifth counts are not insufficient for the reason specified in the defendants' demurrer, we are not to be understood as holding that those counts can successfully withstand a claim that the plaintiff's injuries were not of the type which § 22-358 was intended to prevent. The second and fifth counts allege only that the plaintiff was attacked and injured by a dog that was prematurely released from quarantine. That allegation does not claim an injury of the type § 22-358 was intended to prevent. Cf. *Stiebitz* v. *Mahoney,* 144 Conn. 443, 448, 134 A.2d 71.

The demurrer to the third and fourth counts was sustained by the trial court because no positive act of the town or its employee was alleged. Those counts, based on nuisance, alleged that the dog warden and the town allowed the dog to roam freely, which gave rise to a condition the. natural tendency of which was to create danger. Certain paragraphs of the second count were incorporated into the third and fourth counts and alleged that the dog warden had quarantined the dog pursuant to § 22-358 of the General Statutes and that prior to the expiration of the quarantine period the dog had attacked the plaintiff.

Liability in nuisance can be imposed on a municipality only if the condition constituting the nuisance was created by the positive act of the municipality. *Kostyal* v. *Cass,* 163 Conn. 92, 98, 302 A.2d 121; *Brennan* v. *West Haven,* 151 Conn. 689, 692, 202 A.2d 134; *Sheeler* v. *Waterbury,* 138 Conn. 111, 115-16, 82 A.2d 359; *Karnasiewicz* v. *New Britain,* 131 Conn. 691, 694, 42 A.2d 32. Failure to remedy a dangerous condition not of the municipality's own making is not the equivalent of the required positive act. *Brennan* v. *West Haven,* supra, 693. In testing a complaint against attack by demurrer, the allegations of the complaint are construed in the manner most favorable to the pleader. *Senior* v. *Hope,* 156 Conn. 92, 97, 239. A.2d 486; *Rossignol* v. *Danbury School of Aeronautics, Inc.,* 154 Conn. 549, 557, 227 A.2d 418. "If any facts provable under its allegations would support a cause of action, the demurrer must fail. *Cyr* v. *Brookfield,* 153 Conn. 261, 263, 216 A.2d 198. 'What is necessarily implied need not be expressly alleged.' *Wexler Construction Co.* v. *Housing Authority,* 144 Conn. 187, 193, 128 A.2d 540." *Senior* v. *Hope,* supra, 98.

The allegations that the dog warden quarantined the dog and, prior to the expiration of the quarantine period, allowed the dog to roam freely on the streets necessarily imply that the dog was released by the dog warden. So construed, the complaint alleges more than passive negligence. The release of the dog by the dog warden constitutes a positive act sufficient to withstand the challenge of the demurrer. The demurrer to counts three and four should have been overruled.

The demurrer directed solely to the fifth count claimed that the town was immune from liability for alleged negligence because its employee was performing a governmental act. Where the municipality through its agent or employee acts in the performance of a governmental duty, it has a limited immunity from liability;[3] *Cone* v. *Waterford,* 158 Conn. 276, 279, 259 A.2d 615; but when the act complained of is ministerial, the municipality is responsible for its negligent execution. *Spitzer* v. *Waterbury,* 113 Conn. 84, 88, 154 A. 157; 18 McQuillin, Municipal Corporations (3d Ed. Rev.) § 53.33. "Ministerial" refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion. *Pluhowsky* v. *New Haven,* 151 Conn. 337, 347, 197 A.2d 645; *Blake* v. *Mason,* 82 Conn. 324, 327, 73 A. 782.

In this case, the dog warden was charged under § 22-358 with the duty of quarantining the dog for fourteen days once she found that the dog had

---

[3] Under certain circumstances § 7-465 of the General Statutes imposes liability on the municipality for damages caused by an employee. The fifth count, however, does not allege the facts essential to hold the municipality liable under that statute. See *Martyn* v. *Donlin,* 148 Conn. 27, 32, 166 A.2d 856.

bitten a person who was not upon the premises of the owner or keeper of the dog. While the determination of that state of facts involved the exercise of judgment, the subsequent duty to quarantine for fourteen days was mandatory and, therefore, ministerial. See *Pluhowsky* v. *New Haven,* supra, 347–48. Since the fifth count alleged negligence in the breaking of the quarantine, municipal immunity cannot be claimed.

There is error, the judgment is set aside and the case is remanded with direction to overrule the demurrer to the last four counts of the complaint.

In this opinion the other judges concurred.