[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This lawsuit first came to this court by writ, summons and complaint dated May 12, 1993 and returnable June 22, 1993, seeking damages and other equitable and fair relief as appropriate. CT Page 12467
The defendant City of New London appeared by counsel on June 14, 1993.
The defendant City filed an answer to the Complaint and Special Defense on August 6, 1993.
A Reply to the Special Defense was filed by the plaintiff on August 11, 1993 and the pleadings were closed.
The court makes the following findings of fact.
The plaintiff Knute T. Malinowsky is employed by the City of New London as a firefighter and started his employment with the City in 1991.
The plaintiff was a member of a U.S. Marine Corps Reserve Unit and received military call up orders due to the Persian Gulf conflict on February 10, 1991.
The plaintiff, after being called to active duty, was stationed at Camp Pendleton, California assigned to a combat replacement company. The plaintiff held the rank of corporal.
During training at Camp Pendleton the plaintiff suffered a knee injury.
After the knee injury, the plaintiff returned to Connecticut in March, 1991.
Plaintiff was assigned to the Submarine Base in Groton-New London and there underwent two operations on his knee and received rehabilitative services. These procedures were undertaken in September, 1991.
In December, 1991, plaintiff was reassigned to a mountain warfare training center situated in Bridgeport, California.
On completion of the mountain warfare training the plaintiff was reassigned to Co. C 1st Battalion, 25th marines, situated at Plainville, Connecticut.
The plaintiff ran the armory at Plainville and had some detached duty on Cape Cod.
The plaintiff was honorably discharged from the marines on CT Page 12468 August 28, 1992. See Plaintiff's Exhibit E.
Plaintiff received a letter dated April 23, 1991 from the City of New London, Plaintiff's Exhibit F, indicating that the New London City Council has passed a resolution incident to which the City would compensate reservists called up by payment of a differential all as noted in said letter.
After discharge plaintiff presented certain military papers to the City Personnel Department seeking the differential benefits provided for in Plaintiff's Exhibit F.
The plaintiff served a total of 564 days on active duty date of call up to date of discharge.
Plaintiff's compensation at the time he was called up, as a firefighter for the City, was approximately $31,700.
Plaintiff's Leave and Earning Statement from the military in 1991 was $12,438.31. See Plaintiff's Exhibit H.
Plaintiff received a check from the City of New London on January 29, 1993 reciting a gross amount of $7,504.54 and a net check of $5,140.61. See Plaintiff's Exhibit J.
On September 10, 1992, plaintiff received a notice from the City documenting his effective current pay rate and verifying his ongoing position as a New London firefighter.
The plaintiff's original enlistment in the Marine Reserves was for a term of six years beginning in 1985.
The enlistment would have expired in March, 1991 but for the call up.
At the time of the plaintiff's call up on February 10, 1991, no resolution concerning the City's patriotic gesture to compensate for any wage differential had been proposed, made or acted upon.
The City's Resolution was made, seconded and approved on March 4, 1991. See Defendant's Exhibit 1.
Said resolution provides, as follows: CT Page 12469
 6.3 Vote Regarding Differential Compensation for Active Duty Reservists Called to the Persian Gulf Crisis
 Upon motion of Councilor Olsen, seconded by Mayor Nahas, it was unanimously voted: Reservists called to serve during the current Persian Gulf War shall be compensated for lost wages by payment of the differential between the employee's higher salary and compensation for military service; and, further, claims for said compensation shall, upon return, be a presentation of military compensation documents received during the period of active duty.
Plaintiff had sustained a knee injury at some point in time prior to the knee injury at Camp Pendleton in California.
An opportunity for release from active duty with the Marines presented itself to plaintiff after the two knee operations in September, 1991 if plaintiff would agree with the military that he was 100% fit. Plaintiff did not agree that he was 100% fit and no request for discharge was made.
Shortly thereafter plaintiff was assigned to a mountain warfare program in California.
After plaintiff's return to Connecticut, and prior to discharge, for some period of time plaintiff lived at home and commuted to the Armory in Plainville, Connecticut.
Bertha Willoughby is an employee of the City of New London and is in charge of Personnel matters.
Hostilities commenced in the so called Persian Gulf War on January 15, 1991. Active fighting hostilities in the Persian Gulf War terminated on February 28, 1991. See Defendant's Exhibit 3.
The court judicially noticed the February 28, 1991 issue of the New London Day headlined "Bush Halts Fighting."
Bertha Willoughby made the calculation as to the amount due plaintiff as a result of the City's resolution. See Defendant's Exhibit 4 (Work Sheet). CT Page 12470
Three other City of New London employees were called up for military service for the Persian Gulf conflict. They were Cavanaugh, who returned on July 13, 1991 and received $5,069.97, De La Cruz who returned July 13, 1991 and received $5,733.82 and Segar who received $6,023.66. The date selected as concerns plaintiff's return was July 19, 1991.
The City allowed a reasonable period of time for the reservists to return to their civilian status after the cessation of active hostilities.
The City of New London has defended this claim on the grounds that:
(1) The Resolution did not bind the City for an unlimited duration but only for a reasonable amount of time;
(2) The City is not responsible for intervening or superseding events such as the injury to the plaintiff's left knee, and the delay of the military in certifying his fitness for release from active duty;
(3) If the Resolution is an alleged contract, the Plaintiff had a preexisting duty to leave for active duty and, therefore, there was no consideration by the Plaintiff for the Resolution; and
(4) If the Resolution is an alleged contract, the Resolution was a gratuitous act on the part of the City, and there was no legal duty and no reliance by the plaintiff on said Resolution.
RESOLUTION WAS FOR A SPECIFIC DURATION
The resolution of the City clearly states its goal. The Resolution proposed compensating City employees who were activated from the reserve "during the current Persian Gulf War." The Resolution did not authorize compensation of employees for the duration of their "active duty" nor for their "military service." This is the construction that the plaintiff wants this court to read into the Resolution. A legislative intention not expressed in some appropriate manner has no legal existence.Johnson v. Manson, 196 Conn. 309, 315 (1985). Our courts have stated that the starting point in statutory construction is the language of the statute itself. Jones v. Derwinski, 968 F.2d 1497
(2d Cir. 1992). The intent expressed in the language of the CT Page 12471 statute is a controlling factor in its interpretation. Wright v.Brown, 167 Conn. 464, 356 A.2d 176 (1975). When a word or group of words has an ordinary and common usage, it should be construed that way. River Dock and Pile. Inc. v. O. G. Industries. Inc.219 Conn. 787, 592 A.2d 839 (1991). A cardinal rule of construction is that the statutes are to be construed so that they carry out the intention of the legislature. Holmquist v.Manson, 168 Conn. 389, 362 A.2d 971 (1975). Based on the above principles, the clear obligation of the City, as stated in the Resolution, was to compensate employees who were activated for military service only during the current Persian Gulf War and not for the period of "active duty." By virtue of a declaration of the President of the United States, the hostilities of the Persian Gulf War ceased on February 28, 1991. The fact that the City gratuitously compensated others, including the plaintiff, for a reasonable period of time after the cessation of hostilities should not prejudice the City in the case at bar.[1]
 RESOLUTION WAS NOT FOR AN UNLIMITED DURATION
The theory of the plaintiff's case was that the Resolution of the City was of unlimited duration. No such intent can be read into the Resolution. Moreover, such a reading is unreasonable for the following reasons. First, the City could still be obligated to pay the difference in pay for all reservists if they were still, to the present date, on active duty and not released therefrom. To assume such a financial obligation by the City would have been irresponsible and unreasonable. Second, the law does not favor "agreements" of unlimited duration. Whether construing continuing guarantees [See Monroe Ready Mix Concrete, Inc. v. Westcor DevelopmentCorp. , 183 Conn. 348, 351 (1981)] or terms of a contract [See Benassi v.Harris, 147 Conn. 451, 458 (1960)] the courts impose a period of time that is reasonable in light of all of the circumstances of a particular case.
The sole reason the plaintiff did not return from active duty after the Persian Gulf War within a similar period of time as other New London employees, was due to an injury to his left knee. Such an occurrence was unforeseen at the time the City passed its Resolution. The City should not be responsible for the unexplained delay of the military in releasing the plaintiff.
In applying an interpretation of what is a "reasonable period of time" the City paid the plaintiff through the last date on CT Page 12472 which all other reservists for the City had returned from active duty. This amounted to the continuation of payments for approximately five months after the cessation of fighting. Other than the plaintiff, all other City employees who were called to active duty had returned by July 13, 1991. The plaintiff was paid through July 19, 1991. The City's interpretation was reasonable because it recognized both a desire to compensate reservists for their sacrifice while also recognizing that a reasonable period of time was needed to return to municipal duty.
 THE INJURY TO THE PLAINTIFF AND SUBSEQUENT DELAY OF THE MILITARY FRUSTRATED THE PURPOSE OF THE RESOLUTION
If the Resolution is an alleged contract, then under the doctrine of "frustration of purpose," the acts of the military are a defense for incomplete performance. The doctrine, as recognized in Connecticut, excuses a promisor in certain situations where the objectives of the contract have been utterly defeated by circumstances arising after the formation of the agreement. A party is excused under this rule even though there is no impediment to actual performance. Hess v. Dumouchelle PaperCo., 154 Conn. 343, 350-1. Thus, the plaintiff's injury and subsequent delay of the military frustrated the purpose of the Resolution.
PREEXISTING DUTY
As a member of the United States Marine Corps reserves, the plaintiff had a duty and an obligation to accompany his unit to active duty. The plaintiff had already been called to active duty when the City passed the subject Resolution. The plaintiff had a prior legal duty to go on active duty. The plaintiff did not go on active duty in reliance upon the fact that his wages would remain the same as a result of the Resolution. The plaintiff's preexisting duty renders his claim in this court unenforceable.
RESOLUTION WAS GRATUITOUS
The Resolution was passed unanimously and without debate. It was obviously an act of patriotism. It was also, obviously, gratuitous on the part of the City since the only legal obligation of the City to the plaintiff and others similarly situated was to keep a job open for them after their return from active duty. See 50 United States Code § 459(b). The City did not have a legal duty to guarantee that the plaintiff would not CT Page 12473 sustain a pay reduction upon commencing active duty.
Judgment may enter in favor of the defendant City of New London.
Austin, J.