[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The claims in this case arise out of the consequences of a tree falling onto the second floor roof of residential premises owned by John and Beth Welch and located at 101 South Road in Fairfield, Connecticut, on December 24, 1994. It is undisputed that during the night of December 23 and the early morning hours of December 24, 1994, the area in question was being struck by a "Nor'Easter" storm that has been generally described as severe with lightning and high winds. The then Tree Warden in Fairfield, Kenneth Placko, who had held that position since April of 1992, had been on duty since midnight and described the velocity of the storm. He testified and police blotter records disclosed that several other trees went down that night as well as electrical and telephone wires.
Mrs. Welch testified that she was asleep in a small bedroom facing the road at approximately 4:00 a.m. when she heard a loud noise and then saw the house's roof fall in on her and she actually felt branches of the tree touch her although she was not physically injured by either of these events. She eventually sought the services of a psychologist and then a psychiatrist for emotional problems arising out of the incident and was eventually diagnosed as suffering from Post Traumatic Stress Syndrome and Depression.
Mrs. Welch further testified and identified pictures of the house showing the fallen tree and its position of impact upon the house. It is undisputed that the Welch's insurer, Metropolitan Property and Casualty Company, paid for the property damages caused by the falling true in the amount of $70,074.25. Coincidentally, Mr. Welch was then and remains a Vice President of Metropolitan Property and Casualty Company.
After the incident, Mrs. Welch and her husband and Metropolitan as subrogee brought an action against Kenneth Placko and the Town of Fairfield for the property damage incurred on both the theory of CT Page 11244 negligence and nuisance. In later counts, Mrs. Welch brought a personal injury claim against both defendants, based again on both negligence and nuisance. Generally speaking, her claims alleged the defective condition of the tree and the fact that the Town and Placko should have taken it down before it fell on her home.
As to the condition of the tree, Mrs. Welch testified that she and her husband purchased the premises in the summer of 1987 and as of that time there was a fissure that she observed in the lower level of the tree trunk that had cement in it. She did not describe it further, and she had no idea as to when or by whom the cement was added. She further testified that some time later she believed the tree was cabled but again she had no idea when it was done or by whom. She says she did not do it. She gave no further description of the tree or its condition from the time they purchased the property until December 24, 1994. There is no indication that she or her husband ever complained to the Town or its tree warden as to the poor condition of the tree or that it needed any repair. She further testified that she and her husband did no work on the tree at any time. She verified that the weather that night was stormy with rain and heavy wind. Her husband did not testify.
The plaintiffs called Kenneth Placko as a witness who described his duties as the Town Tree Warden. His specific duties are set forth in Connecticut General Statute § 23-59. He described his main function as maintaining trees within the Town's right of way along town roads. He testified that there are 260 miles of town roads, and when you account for both sides of the street, it totals 520 miles. He estimated the number of trees in the right of way as 50,000 to 70,000. He is also responsible for trees on other town properties which he estimates to be in number between 300, 000 and 500,000. He stated that he drives those streets periodically to look for problems but there is no periodic inspection of all trees. He indicated that about two thirds of the department's work is generated by residents calling in a problem which it then investigates. He again estimated that the Town removes about 500 to 600 trees yearly. He identified plaintiff's exhibit 0 as a summary of work done by his department in the general area of 101 South Road between 1990 and 1997 and he identified one job that was completed on August 29, 1991, specifically at 101 South Road and that was the removal of a branch hanging from the tree involved in this case. That tree is located in the town's right of way. No other town record was introduced as to any complaints made by the Welch's concerning the tree that fell or in fact any other work ever done by the Town on that tree.
Mr. Placko further testified that he was called to the Welch home at about 4:00 a.m. on December 24, saw the fallen tree and made arrangements CT Page 11245 for a crane to remove it. The tree was totally removed except for a stump on that day. He further testified that three or four trees went down just around the corner from 101 South Road and it took three to four weeks to complete the cleanup of the Town from the storm which he described as severe. He further described the tree in question as a sugar maple about 36" in circumference at its base. In addition, he testified that there was nothing he previously observed or heard before December 24, 1994, to lead him to believe that he should inspect that maple tree at 101 South Road.
David McNamara, an employee of Metropolitan, testified as to how the loss was evaluated and what was paid to the Welch's. of significance on plaintiff's exhibit I, the Proof of Loss, the cause of the loss was listed as "windstorm." of further significance also on exhibit I, the loss was described as "CAT 24", which Mr. McNamara then described. The CAT stands for catastrophe and is used to describe a situation where within their multi state region the number of claims exceeds the estimated number of claims predicted for that time period. He described the notation on the Proof of Loss of "due to windstorm of CAT 24" as referring to the same storm and conditions as took place on December 24, 1994.
The plaintiffs' final witness was Joseph Maisano who was qualified as a tree expert. He was hired by Metropolitan. He inspected the remaining stump of the tree on December 29, 1994, as shown in plaintiff's exhibits V. W and X. He testified that the tree had internal decay for several years before it fell and that it contained peat inside its shell. He pointed out what he believed was cement inside the stump which was originally used to strengthen the tree but that method has not been used for 20-25 years because it caused more problems than it prevented. What is significant about that fact is the tree had obviously survived for 20-25 years since the cement was added. He observed a stress crack along a portion of the trunk shown in the photographs which he said was caused by environmental conditions. He never related those stress or growth cracks, as he earlier described them, to any defect or decay in the tree. His examination described what he found inside the outer skin of the tree after it had fallen, but he could describe no indication of decay or defect in the outer layer of the tree other than the growth crack that would alert anyone to the inner condition of the tree. The value of his testimony is severely limited because he was able to view only a small remnant of the tree.
Mr. Maisano was aware of both the concrete in the tree and the cabling of the tree which he said were generally indications of the weakening of the tree. Again, he had no idea as to by whom, when or why these items were done. As for the cabling, which is simply wiring two pieces of the CT Page 11246 tree together for support, he felt the tree should then be inspected every five to eight years to see if it was working. He did not know when the cabling was done or by whom. All Mrs. Welch told him was that it was done some time after they moved in in 1987. The problem with that is there is no evidence that the Town did the cabling or was even aware of the cabling. Further, because the time of the cabling was unclear, even under Mr. Maisano's conclusion that it should be inspected every five to eight years, that time period may not have been reached at the time the tree fell. He did testify that if all the facts about the condition of the tree were known on December 24, 1994, the tree should have been taken down.
On cross-examination, Mr. Maisano testified that stress or growth cracks are very common in sugar maples. He further testified that in his report to Metropolitan he said the tree fell because of high winds. He said it would have been necessary for several factors, including wind velocity, wind direction, and exactly where it hit the tree, to have converged to knock the tree down.
In response to the court's question, Mr. Maisano opined that in the absence of high winds that night the tree would not have fallen, and though he believes it would have eventually fallen, he does not know when. When asked how long before December 24, 1994, the tree in his opinion should have been removed, he could provide no answer.
As far as the cabling is concerned, Mr. Maisano testified it is installed even in healthy trees to provide upper stability for the tree. He opined that once installed it would be prudent to inspect the tree in five to eight years to check it. Because there was no evidence as to when the cabling was installed, there would be no way of knowing whether the time had ever been reached to inspect the tree.
The plaintiffs also want the court to conclude that it was in fact the Town that had done the cabling. The court simply cannot do that. The only thing that the plaintiffs have established through Mrs. Welch is that the Welch's did not do it. Mr. Welch did not testify to confirm that. The plaintiffs did produce, as plaintiff's exhibit 0, one repair to the tree by the Town on August 29, 1991, when a hanging branch was removed. They produced no other evidence as to when, whether or by whom the cabling was done and the court simply cannot fill in the blanks and assume it was the Town. It is fair to assume that if the Town would record the removal of a hanging branch it would record the cabling of the same tree.
The plaintiffs have alleged nine counts in their revised complaint. In the First Count, Mr. and Mrs. Welch allege that Mr. Placko was negligent CT Page 11247 in his failure to remove the tree and failed to maintain it properly or inspect it. (Rev. Compl. At 4.) In the Third Count, the Welches allege nuisance against both defendants based upon the unsafe condition of the tree. In the Fifth Count, the Welches allege municipal liability under Connecticut General Statute § 7-465. The Seventh, Eighth, and Ninth Counts are Mrs. Welch's personal injury counts and are based upon negligence, nuisance, and municipal liability under Connecticut General Statute § 7-465, respectively. The Second, Fourth, and Sixth Counts are Metropolitan's subrogation counts based upon the payment of $70,074.35 to the Welches under their homeowners' insurance policy.
The parties would agree that in order to prevail the plaintiffs must prove negligence or nuisance or both. Negligence generally requires proof of a duty, breach, causation, and damages. Catz v. Rubenstein,201 Conn. 39, 44 513 A.2d 98 (1986) A duty may arise by statute, contract, or circumstances in which a reasonable person would anticipate the harm suffered. Coburn v. Lenox Homes, Inc., 186 Conn. 370, 375,441 A.2d 620 (1982).
It is also well established that the plaintiff has the burden of proof in proving negligence. In reviewing all of the evidence, the court finds that the plaintiffs have failed to establish negligence by a fair preponderance of the evidence.
In paragraph 13 of the First Count, the plaintiffs set forth four specific allegations of negligence in subparagraphs a, b, c, and d. In subparagraph a, the plaintiffs allege that the defendant Placko failed to remove the tree when he reasonably could have or should have done so. In this regard, there is no evidence to demonstrate that the tree reasonably exhibited on its exterior surface such symptoms as would demonstrate that it had to be removed immediately. Certainly, the plaintiffs, Mr. and Mrs. Welch, never complained of its condition. The plaintiffs' expert, Mr. Maisano, testified that on his inspection of the remaining trunk he observed rot. He offered no testimony that a reasonable tree warden or any other person including himself should or would have been able to detect the extent of the interior rot in the tree before it fell.
In subparagraphs b and c of paragraph 13, the plaintiffs respectively claim that Placko caused cabling to be installed in the tree and placed concrete in a portion of the tree when there is no evidence that Placko or any predecessor was responsible for doing such things. Finally, in subparagraph d, the plaintiffs allege that Placko failed to inspect the tree after the placement of cabling and concrete in the tree to insure that it had not become so rotten as to effect its integrity. There is simply no evidence to support that claim. All the court knows is the CT Page 11248 defendant Town removed a hanging branch in April of 1991. There is no evidence that the cabling even existed at that time.
For the foregoing reasons, judgment will enter for the defendants as to Counts First, Second, Fifth, Seventh and Ninth.
In Counts Third, Fourth, Sixth and Eighth, the plaintiffs allege the defendants created a nuisance. The plaintiffs' nuisance claims in this case are predicated upon the following four allegations set forth in paragraph 11 of the Third Count.
 "a. The tree was reasonably unsafe in that it had begun to rot and otherwise become unhealthy and unable to support its own weight and the weight of its limbs.
 b. The defendants' maintenance of the tree was unreasonably inadequate in that the inspection, cabling and concrete were inadequate to enable the tree to remain capable of supporting its own weight.
 c. The defendants allowed the tree to remain standing when it was in danger of falling and damaging the property of Mr. and Mrs. Welch.
 d. The defendants knew or should have known that the tree was unreasonably unsafe and in danger of falling, but failed to remove it or take such other actions as were reasonably necessary to make the tree safe."
The plaintiffs in their brief on page 11 claim that the acts of the defendants constitute a "private nuisance." The defendants in their brief at page 20 claim "any alleged cause of action in nuisance, under the circumstances of this case, would of necessity be a claim sounding in public nuisance", citing Roman v. Stamford, 16 Conn. App. 213, 215
(1988), affirmed 211 Conn. 396 (1985). The court in Roman went on to say the duty "on the part of the city to maintain and care for trees within the limits of all public roads does not constitute a private duty. . . ." As here where both parties agree that the duties and responsibilities of the tree warden are governed by Connecticut General Statute §§ 23-59
and 23-60, the duty is clearly a public one rather than a private one. The court will treat the allegations of nuisance to be a public one and review the evidence to determine if it has been proved. CT Page 11249
The mandatory elements of a nuisance claim against a municipality and its officers and employees are well defined under existing Connecticut law as set forth in the following cases.
 A public-law nuisance claim consists of four core elements: "(1) the condition complained of had a natural tendency to create danger and inflict injury upon person or property; (2) the danger created was a continuing one; (3) the use of the land was unreasonable or unlawful; [and] (4) the existence of the nuisance was the proximate cause of the plaintiffs' injuries and damages.' (Internal quotation marks omitted.) State v. Tippetts-Abbett-McCarthy-Stratton, 204 Conn. 177, 183, 527 A.2d 688 (1987). Elliott v. City of Waterbury, 245 Conn. 385, 420 (1998)
 Finally, in order to overcome the governmental immunity of municipal defendants where it applies, the plaintiff must prove that the defendants, by some positive act, intentionally created the conditions alleged to constitute a nuisance. Keeney v. Old Saybrook, 237 Conn. 135, 165-66, 676 A.2d 795 (1996); Wright v. Brown, 167 Conn. 464, 470, 356 A.2d 176
(1975) ("[l]iability in nuisance can be imposed on a municipality only if the condition constituting the nuisance was created by the positive act of the municipality"). . . . Id. at 421.
 Under the applicable common law, however, a municipality is liable for maintaining a nuisance only if, in fact, the municipality both created and maintained the nuisance by some positive act. See Brennan v. West Haven, 151 Conn. 689, 692, 202 A.2d 134
(1964). Starr v. Commissioner of Environmental Protection, 226 Conn. 358, 389 (1983)
In the present case, the complaint recites facts amounting at most to a permissive continuation of the alleged unsafe condition. Our Supreme Court has drawn a distinction between the creation of a nuisance and the intentional maintenance of a nuisance, holding that a "[f]ailure to remedy a dangerous condition not of the municipality's own making is not the equivalent of the required positive act." Wright v. Brown,167 Conn. 464, 470, 356 A.2d 176 (1975). See also Brennan v. West Haven,151 Conn. 689, 693, 202 A.2d 134 (1964); Sheeler v. Waterbury, CT Page 11250138 Conn. 111, 82 A.2d 359 (1951); Brown v. Branford, 12 Conn. App. 106,112 (1987). "The rule limiting municipal liability for nuisance through mere nonfeasance has its origins in principles of municipal immunity."Keeney v. Old Saybrook, 237 Conn. 135, 164 (1996).
Mr. Maisano did testify that the practice of putting concrete in trees has been discontinued. He did not testify that when the concrete was put in the tree it would have been improper when done or that it should have been removed since. It is unknown, moreover, when and by whom the concrete was put in the tree. The plaintiffs, moreover, do not allege that the placing of concrete by someone at some unknown point in time constitutes a nuisance. No evidence exists, nor is there an allegation in support of which such evidence could have been offered, that the use of the land in the right of way was unreasonable or unlawful.
Dealing with the nuisance counts from another perspective, there is simply inadequate evidence to support factually the claims set forth in paragraph 11 of the Third Count. The plaintiffs allege the tree was "unreasonably unsafe in that it had begun to rot and otherwise become unhealthy." There is no evidence from the outer appearance of the tree that that condition was visible. Their next claim is that the Town's maintenance of the tree was "unreasonably inadequate" and that claim has also not been proved. All the court can conclude from the evidence is that the Town in 1991 removed a hanging branch. There were no recorded complaints from the plaintiffs concerning any unsafe condition of the tree from 1987 to 1994. What they could not see from the outside of the tree in their yard, they claim the defendants should have seen.
They lastly claim that the defendants knew or should have known that the tree was "unreasonably unsafe and in danger of falling." The only evidence that the court can entertain to establish that claim is the fact that the Town removed a hanging branch in 1991. It is possible they might have observed concrete that may have been placed there many years ago by someone, but that hardly amounts to evidence of an unsafe condition. As far as the cabling is concerned, there is no evidence that it was even installed in 1991, and no evidence that it was the Town that installed it.
The plaintiffs completely ignore the unusual weather conditions that existed on December 24, 1994, and their own expert's opinion that it would have required the confluence of many factors to result in the tree falling that night. Certainly, it is clear that without those factors converging the tree would not have gone down.
The court concludes that legally and factually a nuisance against CT Page 11251 either the defendant Placko or the Town has not been established.
Plaintiffs have alleged, in separate counts, that Fairfield is liable pursuant to Connecticut General Statute § 7-465 based on both negligence and nuisance. However, "[a] plaintiff bringing suit under General Statute § 7-465 first must allege in a separate count and prove the employee's duty to the individual injured and the breach thereof. Only then may the plaintiff go on to allege and prove the town's liability by indemnification." (Emphasis in original.) Sestito v.Groton, 178 Conn. 520, 527, 423 A.2d 165 (1979). "This is a personal liability requirement that calls for an inquiry independent of the statute itself, an inquiry into the factual matter of individual negligence." (Emphasis added.) Id. 528, 423 A.2d 165. Thus, in a suit under § 7-465, any municipal liability which may attach is predicated on prior findings of individual negligence or nuisance on the part of the employee and the municipality's employment relationship with that individual. Wu v. Town of Fairfield, 204 Conn. 435, 438, 528 A.2d 364
(1987)
For the reasons set forth above, defendant Placko is not liable under either a negligence or nuisance theory and, therefore, the Town of Fairfield cannot be. Judgment shall enter for the defendants on the remaining counts.
 ___________________ GORMLEY, J.
CT Page 11252