## Laura Lee Genco *v.* Connecticut Light and Power Company

### (3937)

Dupont, C. J., Borden and Daly, Js.

Argued December 13, 1985—decision released April 22, 1986

*Thomas L. Nadeau,* for the appellant (plaintiff).

*James K. Robertson, Jr.,* for the appellee (defendant).

Daly, J. The plaintiff initiated this action by a complaint in two counts, negligence and nuisance, to

recover damages for personal injuries sustained as a result of a diving accident in a lake owned by the defendant.[1] From the granting of a summary judgment, on both counts, in favor of the defendant, the plaintiff has appealed.

Certain facts are not in dispute. The defendant, Connecticut Light and Power Company, is the owner of Candlewood Lake, located in the southwestern part of the state and purported to be Connecticut's largest lake. Abutting the lake are approximately 3000 private homes, an inn, several marinas, a state park and boat launch, and five municipal beaches. The lake, which is man-made, is used for recreational purposes such as swimming, diving, boating and fishing. The general public has access to the lake from the state park. Residents of five municipalities, and some others, have access to the municipal beaches. Inhabitants of the private homes have access to the lake over their land abutting the lake as do patrons of the inn and the marinas. While the municipalities charge their patrons a small fee for the use of their beaches, the defendant does not charge the users.

The plaintiff, Laura Lee Genco, was seriously injured when she dove into the lake and struck its bottom. Her complaint rests upon her allegations that the defendant failed to maintain a safe recreational level of water in the lake, failed adequately to warn users of the lake of its unsafe depth, and failed to abate a nuisance.

The defendant moved for summary judgment under General Statutes § 52-557g,[2] alleging that there was

---

[1] A separate action by the plaintiff against James Robert Taylor, the owner of the land by which the plaintiff gained access to the lake, was consolidated but is not involved in this appeal.

[2] General Statutes § 52-557g provides in pertinent part: "Liability of owner of land available to public for recreation; exceptions. (a) Except as provided in section 52-557h, an owner of land who makes all or any part of the land available to the public without charge, rent, fee or other com-

no genuine issue as to any material fact and that it was entitled to judgment as a matter of law. The trial court rendered a summary judgment in favor of the defendant, holding that General Statutes § 52-557g afforded the defendant immunity on both counts and further holding that the statute was constitutional.

In opposing the defendant's motion for summary judgment on the ground that material factual disputes exist, the plaintiff relies principally on the depositions of various officials associated with facilities at the lake. The plaintiff's claim of error, however, still founders upon her failure to demonstrate that there is a material fact in issue, in accordance with summary judgment procedures outlined in Practice Book §§ 380 and 382.[3]

mercial service for recreational purposes owes no duty of care to keep the land, or the part thereof so made available, safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure or activity on the land to persons entering for recreational purposes.

"(b) Except as provided in section 52-557h, an owner of land who, either directly or indirectly, invites or permits without charge, rent, fee or other commercial service any person to use the land, or part thereof, for recreational purposes does not thereby: (1) Make any representation that the premises are safe for any purpose; (2) confer upon the person who enters or uses the land for recreational purposes the legal status of an invitee or licensee to whom a duty of care is owed; or (3) assume responsibility for or incur liability for any injury to person or property caused by an act or omission of the owner."

[3] Practice Book § 380 provides: "A motion for summary judgment shall be supported by such documents as may be appropriate, including but not limited to affidavits, certified transcripts of testimony under oath, disclosures, written admissions and the like. The motion shall be placed on the short calendar to be held not less than fifteen days following the filing of the motion and the supporting materials, unless the court otherwise directs. The adverse party prior to the day the case is set down for short calendar shall file opposing affidavits and other available documentary evidence. Affidavits, and other documentary proof not already a part of the file shall be filed and served as are pleadings."

Practice Book § 382 provides: "Should it appear from the affidavits of a party opposing the motion that he cannot, for reasons stated, present facts essential to justify his opposition, the court may deny the motion for judgment or may order a continuance to permit affidavits to be obtained or discovery to be had or may make other order as is just."

*Bartha* v. *Waterbury House Wrecking Co.*, 190 Conn. 8, 10, 459 A.2d 115 (1983). "A trial court may appropriately render summary judgment when the documents submitted demonstrate that there is no genuine issue of material fact remaining between the parties and that the moving party is entitled to judgment as a matter of law. . . . When a motion for summary judgment is supported by affidavits and other documents, an adverse party, by affidavit or as otherwise provided by [Practice Book] § 380, must set forth specific facts showing that there is a genuine issue for trial, and if he does not so respond, the court is entitled to rely upon the facts stated in the affidavit of the movant." (Citations omitted.) Id., 11–12.

The plaintiff claims that certain facts are in dispute: whether the land around the lake is made "available" to the public; whether public availability of the lake is offered to those who must trespass over private land to gain access; and whether the legislature intended, under the statute, to prohibit the owner but not intermediaries from charging fees to users.

"Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. 'Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court . . . .' " *Burns* v. *Hartford Hospital,* 192 Conn. 451, 455, 472 A.2d 1257 (1984), quoting *Bartha* v. *Waterbury House Wrecking Co.,* supra, 12. The disputed fact or facts must be material. A material fact is simply a fact which will make a difference in the result of the case. *United Oil Co.* v. *Urban*

*Redevelopment Commission,* 158 Conn. 364, 379, 260
A.2d 596 (1969).

In order to come within the purview of General Stat-
utes § 52-557g (a), the defendant must establish that
it is an owner of land available to the public without
charge for recreational purposes. In reviewing the rec-
ord, we conclude that the defendant meets the require-
ments of § 52-557g (a) and the statutory definitions as
set forth in General Statutes § 52-557f.[4]

Contrary to what the plaintiff argues, signs posted
by the defendant restricting use in certain locations on
the lake (near a dangerous waterfall overlook, for exam-
ple) do not put a material fact in issue. Further, the
plaintiff incorrectly claims that the defendant did not
make the lake available to the public. Affidavits sub-
mitted by the defendant firmly establish that Candle-
wood Lake is available to the public for many
recreational uses with various means of access, includ-
ing a state park, marinas and municipal beaches. It is
undisputed that Candlewood Lake is one of the major
recreational areas in the state and is used by people
numbering in the tens of thousands.

A review of the legislative history,[5] reveals that the
clear purpose of § 52-557g is an attempt to satisfy the

---

[4] General Statutes § 52-557f provides in pertinent part: "Landowner lia-
bility for recreational use of land. Definitions. . . .

(1) 'Charge' means the admission price or fee asked in return for invita-
tion or permission to enter or go upon the land;

(2) 'Land' means land, roads, water, watercourses, private ways and build-
ings, structures, and machinery or equipment when attached to the realty;

(3) 'Owner' means the possessor of a fee interest, a tenant, lessee,
occupant or person in control of the premises;

(4) 'Recreational purpose' includes, but is not limited to, any of the fol-
lowing, or any combination thereof: Hunting, fishing, swimming, boating,
camping, picnicking, hiking, pleasure driving, nature study, water skiing,
snow skiing, ice skating, sledding and viewing or enjoying historical, archeo-
logical, scenic or scientific sites."

[5] 14 S. Proc., Pt. 4, 1971 Sess., pp. 1677–81; 12 S. Proc. Pt. 5, 1967 Sess.,
pp. 2329–30; 13 H.R. Proc., Pt. 4, 1971 Sess., pp. 1804–1806; 12 H.R. Proc.,

public's need for recreational and open space by encouraging private land owners, through limiting their liability, to open their land to public use. The government alone cannot meet this need. "[W]e have long depended and will continue to depend upon the generosity of private owners of land and water to open their property to the use and enjoyment of their fellow citizens. . . . So this act here is to allow limited liability . . . of Connecticut property owners to open their land for public use without charge." 13 H.R. Proc., Pt. 4, 1971 Sess., p. 1805 (remarks of Rep. David Lavine).

For the court to hold that the plaintiff's accident "falls outside the statute would have the effect of discouraging landowners from opening their lands for any public use free of charge. It would require that a landowner either open up his land for *all* purposes, or greatly increase the number of security personnel to ensure that only permitted uses occur in order to secure the protection of the statute." (Emphasis in original.) *Jennett* v. *United States,* 597 F. Sup. 110, 113 (D. Conn. 1984).

The plaintiff argues that the lake can hardly be considered "available to the public" if people must trespass over some portion of its perimeter to get there. As presented in the defendant's affidavits, numerous facilities such as the state park, town beaches, and marinas, are maintained on the lake to provide extensive availability to the public. The fact that, at other points on the perimeter of the lake, one must trespass in order to gain access to the lake, does not remove the lake from the purview of the statute.

The defendant leases land to marinas and town beaches, which in turn charge small fees to their users

Pt. 19, 1967 Sess., pp. 1452–53; Legislative Council, 12th Biennial Report, pp. 84–86 (1966).

to cover their costs of maintenance and operation. The plaintiff claims that these leases and fees constitute "charges" within the meaning of § 52-557g (a). General Statutes § 52-557h, which is cross referenced to § 52-557g (a), provides that an owner is liable "(2) for injury suffered in any case where the owner of land charges the person or persons who enter or go on the land for the recreational use thereof, *except that, in the case of land leased to the state or a subdivision thereof, any consideration received by the owner for the lease shall not be deemed a charge within the meaning of this section."* (Emphasis added.) Thus, under § 52-557h, any financial arrangements made between the defendant and the state and the five towns utilizing the facilities are not deemed charges.

The defendant produced affidavits of persons managing lake-front facilities which reveal that the defendant never charged any fee to users. General Statutes § 52-557f defines "charge" as "the admission price or fee asked in return for invitation or permission to go upon land." Fees charged by marinas, boat docks, or private facilities under a lease with the defendant do not constitute "charges" within the meaning of General Statutes § 52-557f. *Livingston* v. *Pennsylvania Power & Light Co.,* 609 F. Sup. 643, 648 (D.C. Pa. 1985). In construing a similar recreational use statute in Pennsylvania, the court in *Livingston* explained that "charge" connotes a " ' "quid pro quo," i.e., a charge in exchange for permission to enter *that land at that time.' "* (Emphasis in original.) Id., quoting *Hahn* v. *Commonwealth,* 18 Pa. D. & C. 3d 260, 265 (1980). The fees which the plaintiff claims constitute a charge "cannot logically be considered such a "quid pro quo." The court in *Livingston* further held that "[t]he only way to avoid inconsistent application of the Act . . . is to interpret the word 'charge' . . . as an actual admission price paid for permission to enter the land

at the time of its use for recreational purposes."
*Livingston* v. *Pennsylvania Power & Light Co.,* supra.
A fee charged by a marina to the boat owners who dock
their boats at the marina is not an admission price but
merely an operational or maintenance charge. Further-
more, as provided in General Statutes § 52-557h (2),
fees charged by the entities, public or private, which
abut the lake do not make the defendant liable as an
"owner of land [who] charges the person or persons
who enter or go on the land for the recreational use
thereof . . . . "

The plaintiff further claims that the nuisance count
is unaffected by the statutes relied upon and, there-
fore, that summary judgment should not have been ren-
dered on that count. The plaintiff claims that her
nuisance count is guarded from the effect of General
Statutes § 52-557g. The language of the statute clearly
provides that the owner of land "owes no duty of care"
and "does not . . . assume responsibility for or incur
liability for any injury . . . caused by an act or omis-
sion of the owner." By referring generally to "duty of
care" and "liability for injury," the statute does not
expressly limit actions in negligence or nuisance and,
therefore, the defendant is immune to an action in nui-
sance under the statute.

Where the legislative intent is clear, and the language
used is unambiguous, there is no room for statutory
construction. *Seals* v. *Hickey,* 186 Conn. 337, 346, 441
A.2d 604 (1982); Holden & Daly, Connecticut Evidence
§ 50. Furthermore, there is no mention in the statute
of liability for nuisance. A majority of courts constru-
ing similar statutes have held that "the recreational
use law authorizes recovery in the circumstances of
[the] case only if gross negligence or willful and wan-
ton misconduct is shown." *Burnett* v. *City of Adrian,*
414 Mich. 448, 453–54, 326 N.W.2d 810 (1982); *Graham*

v. *County of Gratiot,* 126 Mich. App. 385, 389, 337 N.W.2d 73 (1983). That statute prohibited recovery on the basis of nuisance. Similarly, our statute authorizes recovery "[f]or wilful or malicious failure to guard or warn against a dangerous condition, use, structure or activity." General Statutes § 52-557h (1). It does not authorize recovery for nuisance.

The plaintiff further claims that § 52-557g is unconstitutional, especially as applied, and that the trial court incorrectly dismissed the claim based on *Warner* v. *Leslie-Elliot Constructors, Inc.,* 194 Conn. 129, 479 A.2d 231 (1984), in which the Supreme Court discussed an analogous statute, General Statutes § 52-557j. Section 52-557j, which provides in plain language that no landowner will be liable for any injuries to operators or passengers arising from the operation of certain vehicles including motorcycles on the landowner's property unless the landowner charged a fee for the operation, or unless the injury is caused by the wilful or malicious conduct of the landowner, withstood a constitutional challenge on equal protection grounds in *Warner* v. *Leslie-Elliot Constructors, Inc.,* supra, wherein, the language was deemed clear and unambiguous. A statute limiting private property owner's liability for injuries sustained on his property to situations in which there has been wilful or malicious failure to warn against dangerous conditions is not a special law in contravention of the state constitution and does not deny equal protection. See *Goodson* v. *Racine,* 61 Wis. 2d 554, 213 N.W.2d 16 (1973).

It is well settled that a plaintiff who attacks a state statute on constitutional grounds has the difficult burden to prove unconstitutionality beyond a reasonable doubt. *State* v. *Dupree,* 196 Conn. 655, 663, 495 A.2d 691, cert. denied, 474 U.S. 951, 106 S. Ct. 318, 88 L. Ed. 2d 301 (1985); *Kellems* v. *Brown,* 163 Conn. 478,

486, 313 A.2d 53 (1972), appeal dismissed, 409 U.S. 1099, 93 S. Ct. 911, 34 L. Ed. 2d 678 (1973); Holden & Daly, Connecticut Evidence § 60i. "If the statute does not touch upon either a fundamental right or a suspect class, its classification need only be rationally related to some legitimate government purpose in order to withstand an equal protection challenge." *Ryszkiewicz* v. *New Britain,* 193 Conn. 589, 597, 479 A.2d 793 (1984). The legislative purpose of encouraging private landowners to open their land to the public for recreational purposes constitutes a legitimate governmental purpose, and the statutory limitation of liability is rationally related to the purpose. The classification of persons able to seek redress under the statute is not arbitrary, unreasonable or capricious. *Estate of Thomas* v. *Consumers Power Co.,* 58 Mich. App. 486, 496, 228 N.W.2d 786 (1975).

The plaintiff further claims the statute violates article first, § 10 of the Connecticut constitution, which states that "all courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay." If viewed as a limitation on the right to redress for an injury caused by negligence or nuisance, the restricted liability of landowners would stand contrary to the mandate of article first, § 10, and thus must fall. *Gentile* v. *Altermatt,* 169 Conn. 267, 363 A.2d 1 (1975). This statutory scheme, however, "does not restrict the right to redress for an actionable injury but, rather, redefines the injury or the class of persons injured to which this constitutional right of redress attaches. . . . Thus, the right of redress for injury is constitutional in its nature but the nature of a specific injury is a right derived from the common law or statute." Id., 284–85. A statute limiting the liability of owners who provide the public with park area for outdoor recreational pur-

poses is a reasonable exercise of legislative power, and it does not violate the constitutional provision that the courts shall be open to every person for redress of any injury. *Abdin* v. *Fischer,* 374 So. 2d 1379 (Fla. 1979).

Finally, the plaintiff's claim that the statute violates the distribution of powers clause of article second of the Connecticut constitution, in particular that the legislature has usurped the power of the judiciary, is without merit. "It is the province of the legislative department to define rights and prescribe remedies: of the judicial to construe legislative enactments, determine the rights secured thereby, and apply the remedies prescribed." *Atwood* v. *Buckingham,* 78 Conn. 423, 428, 62 A. 616 (1905). "Executive, legislative and judicial powers, of necessity overlap each other, and cover many acts which are in their nature common to more than one department. . . . To be unconstitutional in this context, a statute must not only deal with subject matter which is within the judicial power, but it must operate in an area which lies exclusively under the control of the courts." *State* v. *Clemente,* 166 Conn. 501, 510–11, 353 A.2d 723 (1974). We fail to see how this statute intrudes at all on the judicial function.

The plaintiff has not sustained her burden of proof on the constitutional claims. "The test of the requirement for the granting of a summary judgment that the moving party be entitled to judgment as a matter of law is resolved by applying to the established facts the same criteria as used in determining whether a party would be entitled to a directed verdict on the same facts. . . . In Connecticut, a directed verdict may be rendered only where, on the evidence viewed in the light most favorable to the nonmovant, the trier of fact could not reasonably reach any other conclusion than that embodied in the verdict directed." (Citations omitted.) *United Oil Co.* v. *Urban Redevelopment Commission,* supra, 380.

We conclude that the pleadings and affidavits viewed in the light most favorable to the plaintiff fail to disclose any genuine issue as to any material fact meriting a hearing, and that the applicable law requires judgment for the defendant. Thus, summary judgment was appropriate.

There is no error.

In this opinion the other judges concurred.