[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO RECONSIDER #117 AND DEFENDANT'S MOTION FOR SUMMARY JUDGMENT #110
The plaintiff administratrix brings this action to recover damages pursuant to General Statutes 52-555 for the death of her son ("decedent"). Named as defendants are Philip Handy, Superintendent of Parks for the City of Bridgeport ("Handy"), and the City of Bridgeport ("City"). On June 25, 1989 the plaintiff's decedent drowned in Bunnell's Pond in Beardsley Park, located in Bridgeport. At the time of his drowning the plaintiff's decedent was allegedly swimming in an area of Bunnell's Pond which was near a man-made dam and which was surrounded by a fence with posted "No Trespassing" signs. The parties do not dispute the fact that access to Bunnell's Pond, located in Beardsley Park, is available to the public free of charge.
In the first count of her amended complaint the plaintiff asserts a negligence claim against Handy. In the second count CT Page 3153 the plaintiff seeks indemnification from the City pursuant to General Statutes 7-465.
On April 2, 1993, the defendants filed a motion for summary judgment (#110). The defendants argued that the plaintiff's claims were barred by the doctrine of governmental immunity and by General Statutes 52-557g (recreational use immunity). The defendants' motion was denied on July 16, 1993, on the ground that the defendants had not met their burden of proof because they failed to establish that Bunnell Pond was available to the public for recreational purposes, and on the ground that neither party submitted any evidence as to whether the duty to repair a fence surrounding portions of Bunnell Pond constitutes either a ministerial or governmental duty.
On February 10, 1994, the defendants filed a motion to reconsider (#117). The defendants ask this court to reconsider its denial of motion for summary judgment #110 in light of the Connecticut Supreme Court's decision in Scrapchansky v. Plainfield, 226 Conn. 446, 627 A.2d 1329 (1993), which was released subsequent to the parties' briefs and arguments in support of and in opposition and the court's consideration of the motion for summary judgment #110. The defendants have also submitted additional evidence of recreational use in support of their motion. The defendants' Motion To Reconsider was granted at short calendar on February 22, 1994 so that the court could consider its earlier decision in light of Scrapchansky v. Plainfield, supra.
General Statutes 52-557g, which provides immunity to land owners who make their land available to the public without charge for recreational use, applies to municipalities and their employees. Manning v. Barenz, 221 Conn. 256, 260, 603 A.2d 399
(1992). As long as the landowner makes the land available for some recreational purposes immunity is provided even where the plaintiff is engaging in a prohibited activity. Jennett v. United States, 597 F. Sup. 110, 113 (D.Conn. 1984) (holding that recovery is barred where plaintiff's decedent drowns in a reservoir in which swimming is prohibited, but which is open to the public for fishing and boating). The recreational use statute is applicable even where one must trespass at certain points on the perimeter to [a] lake in order to gain access to the lake which is open to the public. Genco v. Connecticut Light Power Co., 7 Conn. App. 164, 169, 508 A.2d 58 (1986). CT Page 3154
 "Although the purpose of the act is to make land accessible for recreational use by the public, nothing in the language of 52-557g(a) mandates that land, in order to be "available to the public" under the act, must be open in its entirety to everyone simultaneously. In Genco v. Connecticut Light Power Co., 7 Conn. App. 164, 508 A.2d 58
(1986), it was held that signs posted by the owner of a lake that expressly restricted the use of the lake in certain locations did not make the land unavailable to the public. Stated differently, the word "public" in 52-557g(a) does not require that recreational land be made available to all members of the public at all ties in order to provide a land owner with immunity from liability. "For an area to be `open to public use' it does not have to be open to `everybody all the time.'" (Citations omitted). Scrapchansky v. Plainfield, 226 Conn. 446, 452.
In an affidavit filed on February 10, 1994, defendant Handy attests that:
 5. Although Bunnell's Pond is not open for swimming pursuant to [a city ordinance] . . . and no swimming signs [sic] are posted, Bunnell's Pond is a part of Beardsley Park at which other recreational purposes are allowed including but not limited to viewing and enjoying scenic sites, fishing, kite flying, feeding of various creatures including water fowls [sic], hiking, jogging, nature study, stone skipping, picnicking and sunning on its banks without charge.
CT Page 3155
 6. The area where this incident occurred is not completely fenced in and separated from the park, and is available to the public for recreational purposes.
 7. Public access to pond shore, the island and pond area for all of the. . .recreational purposes may be had by walking around the fence to the bridge from the main park land to the island.
 8. Bunnell's Pond is stocked with fish by the State of Connecticut for sport fishing. . . .
Handy's affidavit establishes that except for a restriction as to swimming, any member of the public may use Bunnell's Pond free of charge, including the fenced area located to the north of the dam, where plaintiff's decedent drowned, for a variety of recreational purposes including but not limited to, viewing and enjoying scenic sites, fishing, kite flying, feeding of various creatures including water fowls, hiking, jogging, nature study, stone skipping, picnicking and sunning on its banks. In Scrapchansky v. Plainfield, supra, the court concluded that "the list of activities enumerated in 52-557f(4) is not exclusive and `is not limited to' those activities listed." Id., 457. "Recreational activities naturally arise from the desires and preferences of the person who is enticed away from the troubles and toil of the workaday world and who is drawn to the outdoors to partake of an activity that is pleasant for its own sake." Id. Under this broad definition all of the activities listed in paragraph five of Handy's affidavit would constitute "recreational activities." Even if Bunnell's Pond was open to the public free of charge for the mere purpose of "viewing" the scenery it would fall within the definition of "recreational activities" enunciated in Scrapchansky.
The fact that certain restrictions are placed upon the use of the land used for recreational purposes does not render the land not "available to the public" as contemplated by 52-557g.
"The plaintiff's suggested interpretation of 52-557g, that CT Page 3156 there must be no restrictions on the public's use of land in order for land to be covered by the act, albeit ideal, is impractical given the realities of recreational land use planning. `[P]rinciples of statutory construction. . . require us to construe a statute in a manner that will not thwart its intended purpose or lead to absurd results.' Turner v. Turner,219 Conn. 703, 712, 595 A.2d 297 (1991). `We must avoid a construction that fails to attain a rationale and sensible result that bears directly on the purpose the legislature sought to achieve. Peck v. Jacquemin, 196 Conn. 53, 63-64,491 A.2d 1043 (1985).' Id., 713. Not all land made `available to the public' for recreational use consists of limitless expanses which the entire public can enjoy at the same time. The owners of public and private land, lakes, ponds, parks, playgrounds, and playing fields across the state obviously need the ability to place reasonable restrictions on the use of their property in order to induce them to make their land available for the enjoyment of the public. Without the ability to impose some restrictions, the owners of land desirable for recreational purposes would be loath to make it available for public use for fear that the use would be unmanageable. The plaintiff's interpretation of the act would invite chaos and would undermine its purpose of providing an incentive to landowners to allow their land to be used by the public for recreational purposes. For instance, any landowner considering allowing public use of his property might think twice before doing so if he or she were required to tolerate its use at all hours of the day or night in order to be entitled to immunity from liability. The legislature, in enacting 52-557g(a), must have contemplated reasonable restrictions on the public's use of land covered by the statute. Because the plaintiff does not claim that the restrictions imposed by the defendants on the use of their land were unreasonable, their land was available to the public as contemplated by the act." Scrapchansky, supra at 453-454.
In the instant case the plaintiff makes no claim of unreasonableness concerning the restrictions limiting the use of Bunnell's Pond. Further the restrictions permit the use of the pond for several recreational uses other than swimming. The plaintiff does not submit any new affidavits or evidence in opposition to the defendants' motion to reconsider. Based on the defendants' affidavit all of Bunnell's Pond was made available to the public free of charge for recreational purposes. Thus, there are no genuine issues of material fact with respect to the issue of whether the recreational use CT Page 3157 statute, General Statutes 52-557g, applies to the present case.
After reconsideration of the defendants' motion for summary judgment in light of Scrapchansky and in light of the defendants' latest affidavit, the defendants' motion for summary judgment is granted as the defendants are immune from liability in accordance with General Statutes 52-557g.
BALLEN, JUDGE