[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff (hereafter "Gundersen") filed a four count complaint against the defendants, claiming damages arising out of the termination of his employment.[1] The first count sounds in defamation and alleges that from December 17, 1979, until May 21, 1990, Gundersen was employed by NES. He alleges that on April 17, 1990, while in his capacity as senior vice president of NES, he inspected a safe stored within NES headquarters and discovered that the safe contained "radioactive bottled" materials. He continues that after this discovery, he became aware of other irregularities proscribed by the Code of Federal Regulations, the "NRC's" Bi-product Materials License and NES's own internal procedures. On May 21, 1990, his employment was terminated.
On December 21, 1990, he entered into a general release and settlement agreement with NES. Since being terminated from NES, he has independently operated his own service business titled "Gundersen Management Analysts" (hereafter "GMA") which serves the nuclear and non-nuclear needs of its customers, as well as performing whistleblower assessment and environmental remediation. GMA does business with both Paul Tobin, the owner of a nuclear consulting company, and Byron Rall, president of a computer consulting company.
The recitation of facts discloses that Walker, the marketing manager of NES, and NES have knowledge of his business relationships with Tobin and Rall, and that in or about May, 1991, Walker contacted Tobin and Rall informing them that NES believed that Gundersen was responsible for NES losing a contract with the Hazardous Waste Management Service. He alleges that CT Page 7795 Walker suggested to Tobin that he was vengeful due to his employment being terminated, and to Rall that the contract was lost because Gundersen had "blackballed" NES.
Gundersen claims that the statements attributed to Walker have maligned his personal and professional reputation for credibility and competence and are false, unprivileged, and attacked his ability to perform his present employment functions and to be perceived as a reliable businessman. Despite making demand upon Walker to retract his statements, Walker has refused and continues to refuse to issue a retraction. The remaining counts allege causes of actions sounding in interference with prospective advantage, intentional infliction of emotional distress and negligent infliction of emotional distress.
The defendants' answer and special defense to count one allege that any alleged defamatory statements were protected by a qualified privilege because they were (1) made in good faith, (2) made in the interest of preserving NES's business relationships, (3) made on a proper occasion, (4) limited in their scope, and (5) published in a proper manner. On April 6, 1994, the defendants filed a motion for summary judgment which is being addressed in this memorandum.
A motion for summary judgment shall be granted "`if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'"Connell v. Colwell, 214 Conn. 242, 246, quoting Zichichi v.Middlesex Memorial Hospital, 204 Conn. 399, 402. "A material fact is simply a fact which will make a difference in the result of the case." Genco v. Connecticut Light Power Co., 7 Conn. App. 164,167. The burden of proof is on the moving party. "[T]he facts presented must be viewed in the light most favorable to the party opposing the motion." State v. Goggin, 208 Conn. 606, 616. "To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact."Fogarty v. Rashaw, 193 Conn. 442, 445, quoting Dougherty v.Graham, 161 Conn. 248, 250. "Issue finding, rather than issue determination, is the key to the procedure." Yanow v. TealIndustries, Inc., 178 Conn. 262, 269.
Count 1 — Defamation
CT Page 7796
"`Broadly speaking, "defamation" is an attack on the reputation of another, that is to say, the unprivileged publication of false statements which naturally and proximately result in injury to another. The term is used to connote fault in the context of broadcasting an alleged insult.'" Ford v. B. D.Trustees, Conn. State University, Superior Court, Judicial District of Hartford/New Britain at Hartford, Docket No. 511557 (August 12, 1993, Koletsky, J.); quoting 53 C.J.S. Libel and Slander, Sec. 2 (1987, Sup. 1992). The court continued by citing 3 Restatement (Second), Torts Sec. 558, that to create liability for defamation there must be:
a) a false and defamatory statement concerning another;
b) an unprivileged publication to a third party;
c) fault amounting to at least negligence on the part of the publisher, and;
d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.
One who publishes a false and defamatory communication concerning a private person, or concerning a public official or public figure in relation to a purely private matter not affecting his conduct, fitness or role in his public capacity, is subject to liability only if he (a) knows that the statement is false and that it defames the other; (b)acts in reckless disregard of these matters; or (c)acts negligently in failing to ascertain them. "In defamation actions, the standard of fault applicable to `private individuals' merely requires the plaintiff to prove a negligent misstatement of fact." 3 Restatement (Second), supra, 580B.
The defendants argue that the evidence reveals that the statements asserted to be defamatory were never made, and nothing was ever said to Rall or Tobin which defamed or discredited Gundersen. Supporting documentation includes an affidavit of Walker which in part recites that:
 I did not . . . tell Byron Rall . . . that `NES believed that plaintiff was responsible for NES losing a contract with the Hazardous Waste Management Service' . . . . [or] suggest to Byron Rall that the `bid was lost because plaintiff had CT Page 7797 blackballed NES.' I have never made any statements regarding Arnold Gundersen with malice or with the intent to cause him humiliation, emotional distress, loss of self esteem, or any other damage.[2]
The affidavits of Tobin and Rall were also submitted, and each maintains that Gundersen's entity, GMA, has never done business with either Tobin or Rall's business, and that Walker never made the statements which he is alleged to have made. Finally, both affiants state "[a]t no time has Mr. Walker ever said anything to me which caused me to lose personal or professional esteem for Mr. Gundersen. In short, Mr. Walker said nothing to cause me to lower my personal or professional opinion of Mr. Gundersen."[3]
Gundersen's submission recites in affidavit form that:
 Byron Rall informed me that he had just spoken to James Walker. Mr. Rall told me that Mr. Walker stated that I had blackballed Nuclear Energy Services, Inc. in my advisory capacity on the Low Level Radiation Waste Advisory Committee. Mr. Rall also told me that Mr. Walker informed him that NES was very upset that I presented myself as an `unemployed whistleblower' to the Connecticut Legislature.[4]
"An out-of-court statement is hearsay . . . only if it is offered to prove the truth of the matter asserted in the statement." State v. Crafts, 226 Conn. 237, 253. The alleged statements made by Rall to Gundersen on May 31, 1991 are not hearsay. The statements are not being offered for their truth, but only to prove that the words were spoken. The statements, Gundersen's recital, as contained in his affidavit, compared with those in Rall's affidavit, reveal that a genuine issue of material fact exists regarding the substance of a conversation, if any, between the defendant and Rall on May 31, 1991. The motion for summary judgment on the first count of the complaint is, accordingly, denied.
Count 2 — Interference with Prospective Advantage
Count 3 — Intentional Infliction of Emotional Distress
Count 4 — Negligent Infliction of Emotional Distress
"`It is . . . well recognized that summary judgment procedure CT Page 7798 is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions.'" (Citations omitted.)Batick v. Seymour, 186 Conn. 632, 646-47. Since Gundersen has incorporated those defamation allegations into the above counts, and since motive and intent are at the essence of the claims, the motion for summary judgment directed at counts two, three and four must also be denied.
Moraghan, J.