[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action arises out of an electrical fire that occurred at premises leased by the defendant, Rein's, Inc. d/b/a Rein's N.Y.S.tyle Deli-Restaurant [hereinafter, "Reins"], on May 1, 1990. Said premises are located in the El Camino Plaza in Vernon, Connecticut. Smoke and water damage from the fire and fire fighting activities allegedly caused property damage and business interruption losses to other tenants of the El Camino Plaza, including: Highland Distributors, Inc. d/b/a Carpet Giant; Sam's Army Navy, A Division of Samsco Stores, Inc.; Adam's Apple; New Beginnings Boutique, Inc.; and Long River, Inc. d/b/a China Star Restaurant [hereinafter, "the subrogors"]. The subrogors allegedly made claims to their respective insurers, Royal Insurance Company of America [hereinafter, "Royal"] and Hartford Fire and Casualty Co. [hereinafter, "Hartford"]. Subsequently, Royal and Hartford allegedly paid insurance proceeds to the subrogors.
On April 30, 1992, the plaintiffs, Royal and Hartford, commenced this subrogation action in the names of their respective insureds against the following defendants: Rein's, the lessee of the premises where the fire occurred; Wilson Electrical Co., Inc., the electricians working within Rein's premises at the time the electrical fire started; and Lore Fiano, Russell L. Potterton, Robert S. Potterton and Evelyn Potterton [hereinafter, "the Fiano/Pottertons"], the owners and lessors of El Camino Plaza. The plaintiffs complaint against the Fiano/Pottertons sounds in negligence, nuisance and breach of contract.
On June 9, 1993, the Fiano/Pottertons filed amended crossclaims against Rein's. In count one, the Fiano/Pottertons allege that the express terms of the lease agreement entered into by the Fiano/Pottertons and Rein's require Rein's to defend and CT Page 8171 indemnify the Fiano/Pottertons for the claims made by the plaintiffs. In count two, the Fiano/Pottertons allege that Rein's actions and conduct from 1971 until May 1, 1990, indicate that Rein's impliedly agreed to undertake a contractual commitment to the Fiano/Pottertons to defend and indemnify them for any and all damages in or about the demised premises arising out of Rein's occupancy, maintenance or use of the demised premises. In count three, the Fiano/Pottertons allege that Rein's breached the express terms of the lease agreement between the parties, in failing to name the Fiano/Pottertons as an additional insured on a public liability insurance company policy.
Thereafter, on August 26, 1993, the Fiano/Pottertons filed a motion for summary judgment as to the first, second and third counts of their amended crossclaim against Rein's, on the ground that there exist no genuine issues of material fact and that they are entitled to judgment as a matter of law. In support thereof, the Fiano/Pottertons submitted a memorandum of law, as well as the following documents: a copy of the lease agreement entered into by the Fiano/Pottertons and Rein's on May 14, 1982; copies of applications, dated July 15, 1980, April 5, 1982, April 5, 1984, and April 23, 1990, for electrical permits for Rein's; copies of reports made by members of the Vernon Police Department; a copy of a report made by Donald Maguda, the Fire Marshall for the town of Vernon; and a copy of an application for a building permit for Rein's.
In response, Rein's filed a memorandum of law, on October 14, 1993, in opposition to the Fiano/Pottertons' motion for summary judgment. In support thereof, Rein's submitted an affidavit, dated October 8, 1993, of Steven Kassman, the manager of Rein's.
Thereafter, the Fiano/Pottertons filed a reply memorandum to Rein's memorandum of law in opposition to the Fiano/Pottertons' motion for summary judgment. In support thereof, the Fiano/Pottertons submitted a deposition of Lloyd Wilson, an employee of Wilson Electrical Co., Inc., and a deposition of Donald Maguda, the Fire Marshall for the town of Vernon.
"Pursuant to Practice Book § 384, summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Scinto v. Stamm, 224 Conn. 524, CT Page 8172 530, 620 A.2d 99, cert. denied, ___ U.S. ___, 114 S.Ct. 176,126 L.Ed.2d 136 (1993). A material fact is simply a fact which will make a difference in the result of the case. Genco v.Connecticut Light Power, 7 Conn. App. 164, 167,508 A.2d 58 (1986). In determining whether any genuine issue of material fact exists, the evidence is viewed in the light most favorable to the nonmoving party. Connell v. Colwell, 214 Conn. 242,246-47, 571 A.2d 116 (1990). Indeed, "[t]he test is whether [the moving party] would be entitled to a directed verdict on the same facts." Batick v. Seymour, 186 Conn. 632, 647,443 A.2d 471 (1982).
Count One
In support of their motion for summary judgment as to count one of their amended crossclaim against Rein's, the Fiano/Pottertons argue that Rein's expressly agreed, in the lease agreement entered into by the parties on May 14, 1982, to indemnify the Fiano/Pottertons for damages and expenses such as those involved in the within action. In response, Rein's argues that the plaintiffs' allegations against the Fiano/Pottertons do not fall within the indemnification provision of the lease agreement between Rein's and the Fiano/Pottertons, because the lease agreement does not specifically require "Rein's to indemnify Fiano/Potterton for any claims arising out of Fiano/Potterton's liability in failing to provide and maintain fire walls and/or fire stops in . . . [the] building. Rein's Memorandum of Law in Opposition to the Fiano/Pottertons' Motion for Summary judgment, p. 12. Additionally, Rein's argues that, because a genuine issue of material fact remains regarding the cause of the fire, it is impossible to determine at this time whether the indemnification provision in the parties' lease agreement is applicable to this case.
The issue of whether the Fiano/Pottertons are entitled to be held harmless and indemnified by Rein's under the subject lease agreement is controlled by Laudano v. General MotorsCorp. , 34 Conn. Sup. 684, 388 A.2d 842 (App. Sess. 1977) andBurkle v. Car Truck Leasing Co., 1 Conn. App. 54,467 A.2d 1255 (1983). In Laudano v. General Motors Corp. , supra, the court held that relatively broad language used in an indemnity clause nonetheless allows recovery by a negligent indemnitee. Laudano v. General Motors Corp. , supra, 34 Conn. Sup. 686 n. 1, 688-89. In that case, General Motors Corporation [hereinafter, "GMC"] and the Boyle Equipment Company CT Page 8173 [hereinafter, "Boyle"] entered into a written contract whereby Boyle agreed to sell to GMC and install at its premises six dock shelters. Id., 685. The indemnity clause contained within the parties' contract provided, in pertinent part, as follows:
 If this order covers the performance of labor for Buyer [GMC], Seller [Boyle] agrees to indemnify and protect Buyer against all liabilities, claims or demands for injuries or damages to any person or property growing out of the performance of this contract by Seller, its servants, employees, agents or representatives.
(Emphasis added.) Id., 686. Thereafter, the plaintiff, an employee of Boyle, came onto the premises of GMC to aid in the installation of a dock shelter. While acting within the scope of his employment, the plaintiff was standing on a ladder which was resting against an overhead door. When the door was raised, it caused the plaintiff to fall to the ground and sustain certain personal injuries. The plaintiff brought an action in negligence against GMC, who then impleaded Boyle. Id., 685-86.
In determining whether Boyle or GMC should be liable, under the indemnity clause set forth above, for the plaintiff's injuries, the court first acknowledged that:
 In modern commerce, indemnity clauses are no longer so unusual as to require such specific mention of the indemnitee's conduct as being within the scope of the indemnifying obligation. Indemnity clauses in contracts entered into by businesses, particularly in construction contracts, should be viewed realistically as methods of allocating the cost of the risk of accidents apt to arise from the performance of the contract.
(Citations omitted; internal quotation marks omitted.) Id., 687. Additionally, the court pointed out that "[t]he unambiguous language of an indemnity clause should be given effect as expressing the parties' intention," because "[a] contract must be construed according to the intention of the parties." (Citations omitted; internal quotation marks omitted.) Id.
 The intention of the parties is to be ascertained from the language used in the contract and that language must be given its common meaning and usage where it can be sensibly applied to the subject matter of the contract. CT Page 8174 A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings. An intention to indemnify one against his own negligence, [however], must be expressed in clear and unequivocal language.
(Citations omitted; internal quotation marks omitted.) Id. 687-88. Applying these principles to the matter before it, the court found that the language of the contract provision "clearly, unqualifiedly, and unequivocally state [d] that `Seller agrees toindemnify and protect Buyer against allliabilities, claims or demands . . . growing out of the performance of th[e] contract . . . .'" Id., 688. Additionally, the court found that "[t]here cannot be any broader classification than the word `all,'" because "[i]n its ordinary and natural meaning, the word `all' leaves no room for exceptions." For these reasons, the court concluded that "[t]he plain meaning of the words employed in the contract fairly include[d] a promise to indemnify even the negligent indemnitee," and "[t]here is no reason why more should be required to establish the unmistakable intent of the parties." Id., 688.
Finally, because the court found that "Boyle agreed to indemnify and protect GMC against all liabilities, no matterhow such liabilities were caused, provided that they grew out of the performance of the contract," and because the court determined that the plaintiff "was injured while he was engaged in duties in connection with work to be performed under the contract," the court held that GMC was entitled to indemnification from Boyle for the plaintiff's claims. (Emphasis added.) Id., 689.
Similarly, in Burkle v. Car Truck Leasing Co., supra, the court held that the indemnification clause contained within the subject lease agreement entitled the lessor to be held harmless and indemnified by the lessee, even where the lessor conceded that it furnished the lessee with a defective motor vehicle. Burkle v. Car Truck Leasing Co., supra,1 Conn. App. 57. In that case, the plaintiff brought suit against the defendant for damages for personal injuries sustained while operating a motor vehicle leased by her employer from the defendant. The plaintiff's employer intervened in the case to secure reimbursement for money payable to the plaintiff under the Workers' Compensation Act, and the defendant thereafter CT Page 8175 counterclaimed against the intervening plaintiff for indemnification. Id., 55.
The lease provision interpreted by the Burkle court provided, in pertinent part, as follows:
 Lessee agrees to indemnify and hold Lessor harmless from any and all liability, loss, costs, damages and expenses including reasonable attorneys' fees caused by or arising from ownership, use, operation . . . of one or more automobiles leased hereunder.
(Emphasis in original.) Id., 56. Acknowledging that "[a] very similar contractual provision was construed by the Appellate Session of the Superior Court in Laudano v. General MotorsCorp. ," and that said case "is on all fours with this case and is controlling," the Burkle court agreed with the lessor that the plain meaning of the words in the indemnification clause before it "include[d] a promise to indemnify even the negligent indemnitee," and that "[t]here is no reason why more should be required to establish the unmistakable intent of the parties." Id., 56-57. Consequently, the court held that the lessee was obligated to indemnify and hold harmless the lessor. Id., 57-58.
In the within matter, genuine issues of fact do exist regarding the actual cause of the fire that occurred, at the premises leased by Rein's, on May 1, 1990.[1] The actual cause of the fire, however, is not a genuine issue ofmaterial fact, because it is not a fact that will make a difference in the outcome or result of this case. (Emphasis added.) See Genco v. Connecticut Light Power, supra,7 Conn. App. 167. Thus, for purposes of deciding the motion for summary judgment currently before the court, we may presume, as the appellate court did in Burkle v. Car Truck LeasingCo., supra, that the premises leased by the Fiano/Pottertons to Rein's were defective when leased, as a result of negligence on the part of the lessors, the Fiano/Pottertons. See Burklev. Car Truck Leasing Co., supra, 1 Conn. App. 56.
The documents submitted by the Fiano/Pottertons in support of their motion for summary judgment establish that, on May 1, 1990, a fire occurred at the premises leased by Rein's. Additionally, the documents establish that the fire arose out of the maintenance and use of the subject premises by Rein's. Finally, CT Page 8176 at the time of the fire, the lease agreement entered into between Rein's and the Fiano/Pottertons was in full force and effect. The relevant provisions of said lease agreement provide as follows:
 10.1 Lessee will, throughout the term of this Lease, provide and keep in force, at its own expense, a public liability insurance policy covering the demised premises, . . . against any and all liability claims and demands for injuries to persons or loss of life and damage to property arising out of the occupancy, maintenance or use of the demised premises . . . .
 10.2 The Lessee shall save the Lessor harmless from any
liability or expense on account of any accident or injury to Lessee, or to its property, or to any of its servants, employees, or agents, who or which may be injured or damages in or about the demised premises from the occupancy, maintenance, or use of the demised premises or from the conduct of the Lessee's business at the demised premises.
(Emphasis added.) Similar language contained in other lease agreements has been held to require total indemnification, even under circumstances where the loss was caused by the indemnitee's own negligence. See Laudano v. General Motors Corp. , supra; Burkle v. Car Truck Leasing Co., supra. Here, as in the cases cited above, "[t]he plain meaning of the words employed in the contract fairly includes a promise to indemnify even the negligent indemnitee," and "[t]here is no reason why more should be required to establish the unmistakable intent of the parties." Burkle v. Car Truck Leasing Co., supra, 1 Conn. App. 57, quoting Laudano v. General MotorsCorp. , supra, 34 Conn. Sup. 688. Accordingly, the Fiano/Pottertons, motion for summary judgment as to count one of their amended crossclaim against Rein's is hereby granted.
Count Two
In their memorandum of law in support of their motion for summary judgment, the Fiano/Pottertons argue that they are entitled to summary judgment as to the second count of their amended crossclaim against Rein's, because the terms of the lease and surrounding circumstances show a clear intent that Rein's assume responsibility for any damages arising out of Rein's CT Page 8177 tenancy. However, in their motion for summary judgment, the Fiano/Pottertons indicate that the court should consider their motion for summary judgment as to the second count of their amended crossclaim only in the event that the court determines that the Fiano/Pottertons are not entitled to summary judgment as to the first count of their amended crossclaim. Accordingly, because we have granted the Fiano/Pottertons summary judgment as to the first count of their amended crossclaim, we need not address the second count of their amended crossclaim.
Count Three
Finally, the Fiano/Pottertons argue that they are entitled to summary judgment on the third count of their amended crossclaim against Rein's, for breach of contract, because, although the lease clearly provides that Rein's was to include the Fiano/Pottertons as named insureds on its public liability insurance policy, so that its liability insurer should assume the defense of this action and indemnify the Fiano/Pottertons for the damages alleged by the plaintiffs, Reins failed to so name the Fiano/Pottertons.
In response, Rein's argues that the Fiano/Pottertons' breach of contract claim is irrelevant to the within action, because the conduct of the Fiano/Pottertons over a period of almost eight years modified and/or waived the lease agreement's requirement that Rein's include the Fiano/Pottertons as named insureds on its public liability insurance policy.
It is undisputed that Rein's was required, pursuant to its lease agreement with the Fiano/Pottertons, to name the Fiano/Pottertons as additional insureds on its public liability insurance policy. Section 10.1 of the subject lease agreement provides, in pertinent part, as follows:
 Lessee will, throughout the term of this Lease, provide and keep in force, at its own expense, a public liability insurance policy covering the demised premises . . . which policy shall name the Lessor as an additional insured, and that he will deliver to the Lessor certificates of such policies . . . .
Additionally, it is undisputed that Rein's failed to include the Fiano/Pottertons as named insureds on its public liability insurance policy. See Answer of Rein's to Third Count of CT Page 8178 Fiano/Pottertons, amended crossclaims.
Section 24.1 of the parties' lease agreement provides, in pertinent part, however, that:
 The waiver by Lessor of any breach of any terms, covenant or condition herein contained shall not be deemed to be a waiver of such term, covenant or condition or any subsequent breach of the same or any other term, covenant or condition herein contained . . . . No covenant, term or condition of this Lease shall be deemed to have been waived by Lessor, unless such waiver be in writing by Lessor.
Rein's has failed to provide this court with any writing evidencing a waiver by the Fiano/Pottertons of the covenants contained in sec. 10.1 of the parties' lease agreement. "[I]t is not within the power of th[is] court to make a new or different contract. The plain implication of the contract must be followed in accordance with the intention of the parties." (Citations omitted.) Osborne v. Locke Steel Chain Co., 153 Conn. 527,531-32, 218 A.2d 526 (1966). Accordingly, the Fiano/Pottertons' motion for summary judgment as to count three of their amended crossclaim against Rein's is hereby granted.
Klaczak, J.