[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT
On July 1, 1992, the plaintiff, Douglas G. Brown, in his capacity as Administrator of the Estate of Gregory Brown, filed a substitute complaint seeking damages arising out of his son's suicide.
The following background facts are derived from the plaintiff's substitute complaint.
On November 28, 1984, at approximately 4:30 P.M., the Milford Fire Department received a telephone call from a young boy who reported that Gregory Brown (Gregory) had just informed him that he, Gregory, was going to commit suicide by inflicting a gunshot wound to his head. Within minutes, the Milford Fire Department, along with officers of the Milford Police Department arrived at the Brown's residence, which was "completely dark." The officers assembled on the street approximately 100 yards from the Brown residence. When a light went on in a window located at the front left corner of the second floor of the Brown residence, the fire and police personnel kept cover, observing the house until the house returned to total darkness. The officers then slowly converged upon the house, and Gregory ran out the read door, carrying a portable telephone in his hand. At that point, one of the police officers, Frank Hosey (Hosey), secured Gregory. According to the plaintiff, Hosey failed to inquire of Gregory as to where he was going, why he was carrying a portable phone or why he appeared worried. Thereafter, Hosey communicated to police headquarters that he had secured Gregory and that he and Gregory were returning to the inside of the Brown residence. Upon his arrival at the kitchen portion of the residence, Gregory was questioned by two other officers of the Milford Police Department, Patrick Dooling III (Dooling) and Edward O'Keefe (O'Keefe), who were quickly joined by another officer, Lieutenant Henry Povinelli (Povinelli). Shortly thereafter Hosey conducted a "cursory" search of the home. With regard to the search, the plaintiff maintains that Hosey conducted a five minute search that was comprised of checking under beds and looking in closets, passing through all rooms located in the upstairs portion of the residence and conducting a "visual check" of other areas of the residence. During CT Page 9470 the questioning, Gregory offered his name, the fact that his parents were either at work or in transit therefrom, and that his father would be home in approximately twenty minutes. According to the plaintiff's allegations, Povinelli instructed Gregory to tell his father of the preceding events and that an officer would return later to talk to him. At this juncture, the plaintiff states that one of the officers informed the fire department personnel that the alarm was false and that they could return to their station. The plaintiff states that the Milford Fire Department remained at his residence for a total of seven minutes and that police personnel spent less than ten minutes investigating the possible suicide. The plaintiff further states that police personnel also failed to conduct a follow-up investigation or neighborhood canvass.
The plaintiff alleges in his complaint that had police personnel conducted a proper investigation and neighborhood canvass, they would have acquired the following pertinent facts with regard to Gregory's impending suicide.
According to the plaintiff, his next door neighbors, the Mogers, were familiar with the Brown family schedule and that the Moger's son, Brian, was intimately familiar with Gregory's despondent behavior. Specifically, the plaintiff refers to Brian Moger's knowledge of Gregory's falsification of his report card and the Browns' subsequent discovery of that forgery. Moreover, the plaintiff states that Brian Moger had previously tried to dissuade Gregory from taking his own life and that Brian Moger was privy to Gregory's knowledge of where guns and ammunition were stored at the Brown residence and was privy to the fact that Gregory had secretly procured a gun out of the plaintiff's closet on at least one prior occasion.
In addition, the plaintiff states that at a playground less than 150 yards away from his residence Gregory had inscribed a message on the tape of a tennis net that read "Greg Brown was here the day he died . . . Greg Brown." Furthermore, the plaintiff maintains that several young teenage boys who had heard of Gregory's despondency and his suicide plans were playing basketball at the playground at the time when the investigative personnel arrived at the Brown residence. Although the teenage boys positioned themselves across the street from the Brown residence during the investigation, no police officer attempted to question them with regard to acquiring any information of aid to them in their investigation. CT Page 9471
Upon arriving home at approximately 5:45 P.M., on November 28, 1984, the plaintiff found Gregory dead in the master bedroom as a result of a self-inflicted gunshot wound to the head. The plaintiff alleges that his son's suicide occurred almost immediately after the police officers had left his home and had occurred in the same room where the officers had earlier witnessed a light going on.
Based on the foregoing, the plaintiff argues that his son was an identifiable person in imminent danger and that officers Hosey, Dooling, O'Keefe and Povinelli (the defendants) were in a special or custodial relationship with Gregory. The plaintiff further alleges that in addition to the defendants' failure to protect Gregory's life when they had strong reason to believe that danger was imminent, the defendants acted negligently and with "deliberate indifference to the known dangers confronting Gregory" by making no effort to contact either the plaintiff or any other relative or friend of Gregory and/or his family. Further, the plaintiff contends that by responding to the suicide report and speaking with Gregory, the defendants assumed a special relationship with Gregory and his parents "under which they had a direct responsibility for Gregory's continued life and had the duty to protect Gregory from killing himself on the date in question." Therefore, the plaintiff alleges that Gregory's death was directly and proximately caused by the acts and omissions of the defendants.
On October 26, 1992, the defendants filed their answer. By way of six special defenses, the defendants allege that: (1) Gregory's death was caused by his "deliberate determination" to commit suicide and that his determination was "independent of any alleged acts or omissions or behavior of the defendants"; (2) they had no duty to protect Gregory from danger, "especially self imposed" danger; (3) they are immune from liability because they were engaged in discretionary, as opposed to ministerial, duties; (4) there existed no "special relationship" between the defendants and Gregory that would give rise to the cause of action alleged; (5) "[t]he defendants did not act with deliberate indifference to known dangers confronting Gregory Brown, and such has been established as the law of the case" pursuant to the court's (McGrath, J.) memorandum of decision dated June 9, 1992, granting defendant's motion to strike; and, (6) the plaintiff's action "is barred by the applicable statute of limitations."
On October 18, 1994, the defendants' filed this motion for summary judgment on the grounds that the plaintiff's action is barred by both the statute of limitations and the doctrine of CT Page 9472 governmental immunity.[1] In support of their motion, the defendants have filed a memorandum of law, with their own affidavits. In further support of their motion, the defendant have filed a copy of the plaintiff's responses to the defendants' request for admissions, copies of excerpts of the deposition testimony of Povinelli and a copy of the police report.
In opposition to the defendants' motion, the plaintiff has filed a memorandum of law, with his own affidavit. In further support of his opposition, the plaintiff has filed copies of several purported letters from members of the Milford Fire Department, a copy of the Milford Fire Department's purported transcription of their suicide call to another agency, a copy of various excerpts of deposition testimony, a copy of a police report, a copy of the affidavit of Deputy Sheriff Robert S. Miller and a copy of a purported statement given by Robert D. Malaro to the Milford Police Department.
Thereafter, the defendants filed a reply memorandum, along with a copy of a memorandum of decision from a District Court case[2] and copies of various excerpts of deposition testimony.
A motion for summary judgment shall be granted "`if the pleadings, affidavits, and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Barretv. Danbury Hospital, 232 Conn. 242, 250, ___ A.2d ___ (1955). A material fact is simply a fact which will make a difference in the result of the case. Genco v. Connecticut Light and Power Co.,7 Conn. App. 164, 167, 508 A.2d 58 (1986). The burden of proof is on the moving party. State v. Goggin, 208 Conn. 606, 616, 546 A.2d 250
(1988). "To satisfy his burden, the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact."Fogarty v. Rashaw, 193 Conn. 442, 445, 476 A.2d 582 (1989), quotingDougherty v. Graham, 161 Conn. 248, 250, 287 A.2d 382 (1971). In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party.Barrett v. Danbury Hospital, supra. Issue finding, rather than issue determination, is the key to the procedure. Yanow v. TealIndustries, Inc., 178 Conn. 262, 269, 422 A.2d 311 (1979).
At the outset, it should be noted that the parties have attached uncertified copies of excerpts of deposition testimony in support of their respective positions. However, "uncertified copies CT Page 9473 of excerpts of deposition transcripts are not admissible as evidence and do not comply with the requirements of Practice Book § 380." See Oberdick v. Allendale Mutual Insurance,9 Conn. L. Rptr. 607, 608 (September 27, 1993, Celotto, J.). Therefore, these quoted excerpts submitted by the parties can not be considered by the court.
A. Statute of Limitations
General Statutes § 52-592 provides, in part, that:
 If any action, commenced within the time limited by law, has failed one or more times to be tried on its merits because . . . the action has been dismissed for want of jurisdiction . . . [an] executor or administrator, may commence a new action . . . for the same cause at any time within one year after the determination of the original action or after the reversal of the judgment.
 The provisions of this section shall apply . . . to any action brought to the . . . district court for the district of Connecticut which has been dismissed without trial upon its merits or because of lack of jurisdiction in such court.
In their supporting memorandum, the defendants state that on June 20, 1990[3], the United States District Court for the District of Connecticut granted their motion for summary judgment against the plaintiff's federal claims, but that the plaintiff's pendent state claims for negligence were dismissed without prejudice to their pursual in state court. Thereafter, the plaintiff instituted the present action pursuant to the "Accidental Failure of Suit" statute, § 52-592 and by the original complaint dated June 13, 1991. The defendants then contend that since the federal court action was dismissed on June 20, 1990, § 52-592 would operate to extend the limitations period only to June 20, 1991. The defendants argue that since service upon them was effectuated on June 27, 1990, "fully one week later", the plaintiff's action is time barred.
The plaintiff counters in his opposition memorandum that the only evidence in the record reveals that service was effectuated upon the defendants on June 27 and 28, 1990. Furthermore, the CT Page 9474 defendants have not met their burden of proving when the federal action was dismissed, which constitutes a material fact in issue with respect to the defendants' limitations defense.
A review of the Sheriff's return in this case reveals that service was effectuated upon the defendants on June 27, 1990.[4]
However, the defendants have not proffered evidence that would demonstrate on what date the clerk at the federal court rendered judgment for purposes of final judgment with regard to the disposition of the plaintiff's federal claims. A genuine issue of material fact exists as to whether the plaintiff has timely filed the present action. Therefore, the defendant's motion for summary judgment on statute of limitation grounds is denied.
B. Governmental Immunity
"The [common law] doctrines that determine the tort liability of municipal employees are well established." Mulligan v. Rious,229 Conn. 716, 726, 643 A.2d 1226 (1994), quoting Burns v. Board ofEducation, 228 Conn. 640, 645, 638 A.2d 1 (1994). Although historically "`[a] municipality itself was generally immune from liability for its tortious acts at common law; Ryszkiewicz v. NewBritain, 193 Conn. 589, 593, 479 A.2d 793 (1984) . . . [municipal] employees faced the same personal tort liability as private individuals.' Gordon v. Bridgeport Housing Authority, [208 Conn. 161,165, 544 A.2d 1185 (1988)]." Id., quoting Evon v. Andrews,211 Conn. 501, 505, 559 A.2d 1131 (1989). "`[T]he public duty doctrine provides the starting point of the analysis' with regard to the question of municipal liability." (Citations omitted). Roman v.Stamford, 16 Conn. App. 213, 219, 547 A.2d 97 (1988), aff'd.211 Conn. 396, 559 A.2d 710 (1989). The court must determine whether there is a public or private duty, and such a determination is a question of law. Id., 219-20. "`[I]f the duty to which the official authority imposes upon an officer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public and not an individual injury, and must be redressed if at all in some form of public prosecution. On the other hand, if the duty is a duty to the individual, then a neglect to perform it or to perform it properly, is an individual wrong, and may support an individual action for damages.'" (Citations omitted.) Gordon v. Bridgeport Housing Authority, supra 166. Once a determination is made with regard to duty, "the issue of municipal liability may also turn upon whether the specific act in issue was ministerial or discretionary." (Citation omitted) Romanv. Stamford, supra, 221. CT Page 9475
"Generally, a municipal employee is liable for the misperformance of ministerial acts, but has a qualified immunity in the performance of governmental acts." Mulligan v. Rious, supra, 727. "Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature." Id., quoting Gauvin v. New Haven, 187 Conn. 180, 184, 445 A.2d 1 (1982). "In contrast, `[m]inisterial' refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion." Id., quoting Wright v. Brown, 167 Conn. 464, 471,356 A.2d 176 (1975). "Over the years, however, `[t]he doctrine of governmental immunity has provided some exceptions to the general rule of tort liability for municipal employees.'" Id., quotingBurns v. Board of Education, 228 Conn. 640, 645, 638 A.2d 1 (1994). "A municipal employee's immunity for the performance of discretionary governmental acts is, [therefore], qualified by three recognized exceptions: `first, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . second, where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws . . . and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence.' (Citations omitted.) [Evon v. Andrews, supra, 211 Conn. 505.]" Id., quoting Burns v. Board of Education, supra, 645. Regardless of the type of duty established, the municipal employee is absolved of liability if the act complained of is a discretionary act that falls outside of any of the above exceptions. Gordon v. BridgeportHousing Authority, supra, 169.
In responding to a report of a possible suicide, the defendants in this case were performing a private duty to an individual, Gregory, as opposed to a duty to the public. Moreover, that response demonstrates that the defendants "were performing a discretionary governmental act, and they are entitled to immunity unless one of the three exceptions delineated in Evon v. Andrews
applies." Brown v. Dooling, 6 Conn. L. Rptr. 521, 522 (June 9, 1992, McGrath, J.).
In their supporting memorandum, the defendants argue that the facts of the present case fail to establish the degree of imminence necessary so that liability could attach pursuant to the "discrete person/imminent harm" exception to the doctrine of governmental immunity. With regard to any special relationship theory, the defendants maintain that there exists no common law or statutory CT Page 9476 right to "protection from oneself" in Connecticut. The defendants contend that the "legislature has chosen to provide qualified immunity for municipal employees engaged in discretionary acts unless one of the three exceptions apply." Therefore, the defendants postulate that since the facts of this case do not come within the ambit of the "identifiable person/imminent harm exception, liability cannot attach under any special relationship theory."
In his opposition memorandum, the plaintiff initially acknowledges that the actions of the defendants were discretionary in nature, but counters that the "identifiable victim/imminent harm" exception applies to these facts and that the defendants' exhibits fail to refute his position. First, the plaintiff argues that Gregory was an "identifiable victim" for purposes of the first exception to the doctrine of governmental immunity. Second, the plaintiff maintains that Gregory was at risk of imminent harm based upon (1) the Milford Fire Department receiving a call that Gregory was threatening suicide with a shotgun, (2) the defendants' receipt of that call from the Milford Fire Department, and (3) the defendants' knowledge of this information when they were dispatched to the plaintiff's residence. The plaintiff continues, suggesting that "a minor who is reportedly threatening to shoot himself is, by definition, at risk of imminent harm" and the fact that the defendants responded to a suicide report at a particular address establishes the necessary imminence to comport with the exception. Furthermore, the plaintiff posits that the question of whether Gregory was at risk of imminent harm is for a jury to decide. The plaintiff argues that if the officers' investigation was more thorough, they would have discovered Gregory's suicidal propensities.
Attached to the defendants' motion are their own affidavits wherein they state, inter alia, that:
 While speaking with us in his home, Gregory Brown appeared calm, cooperative and in complete control of his emotions.
 Based upon our conversations with the plaintiff's decedent, observations of his behavior, search of his house and inability to develop any corroborating evidence, we concluded that the suicide call was a hoax or prank.
CT Page 9477
 Gregory Brown did not appear to be in danger of harm, imminent; or otherwise, when we left him in his home on November 28, 1984.
Whether the facts as outlined should have led the investigating officers to conclude that Gregory was a person at risk of imminent harm is a question of fact. Although defendants answer this question in the negative, the plaintiff has a right to have the trier of fact make this determination.
Therefore, defendants' Motion for Summary Judgment is denied.
SKOLNICK, J.